## CAROLINE H. DOHS v. PAUL S. KERFOOT.[1]

May 15, 1931.

No. 28,470.

*Fred L. Doud,* for appellant.
*Barrows, Stewart, Jackson & Junkin,* for respondent.

HOLT, J.

Plaintiff appeals from the order denying her motion for judgment notwithstanding or a new trial.

[1]Reported in 236 N. W. 620.

Defendant is a stock broker, and through her agent plaintiff subscribed for 100 shares of stock of a corporation called the Insurance Holding Company, for which she agreed to pay $1,500, of which she paid $1,000 January 11, 1928, and the balance on July 2, 1928. About two years later she returned the stock to defendant's office and demanded payment of the $1,500 paid therefor with interest from the dates of payment, on the claim that the stock was misrepresented. Defendant communicated with the vendor by telephone in the presence and hearing of plaintiff's agent. After some delay the vendor accepted the returned stock and refunded the $1,500 to plaintiff through defendant's efforts. This action is against the broker to recover the interest on the $1,500 during the time that money was in the hands of the vendor.

The complaint alleged that defendant agreed to pay this interest to plaintiff. The answer denied any agreement so to do. Other defensive matter pleaded is not now of importance. At the beginning of the trial the court was advised that the parties had stipulated "that the only questions in this case to be decided are the questions of rescission vel non, and whether there was an independent promise to pay interest, and the legal question as to whether the obligation to pay interest follows the rescission if one was made." The verdict was for defendant.

No attention need be given to the first question. Whether there was good cause for rescinding by the vendee is not now important. The evidence is conclusive that rescission was accomplished, the vendor accepted the stock back, and the vendee received from him what she had paid.

Did the obligation to pay interest follow rescission? As between vendee and vendor, in an action for money had and received, brought after rescission by act of vendee, we think a recovery may be had for interest from the time the vendor received the money. There is some room for the contention that since the cause of action for money had and received does not arise until rescission, interest dates from the time of recission. Such appears to be the view of some courts both in England and here. However 41 C. J.

p. 72, § 81, states the weight of authority in this country is that interest runs from the time the vendor received the purchase price. Of the cases so holding none show the situation here present, where recovery of interest is sought of the broker after the vendor has returned to the vendee the money the latter paid. In actions by vendees direct against the vendors after the vendees have by their own acts rescinded for good cause, the following cases countenance or directly hold interest recoverable: Pierce v. Staub, 78 Conn. 459, 62 A. 760, 3 L.R.A.(N.S.) 785, 112 A. S. R. 163; Wood v. Robbins, 11 Mass. 503, 6 Am. D. 182; Higgins v. Crouse, 63 Hun, 134, 17 N. Y. S. 696; Lambert v. Elmendorf, 124 App. Div. 758, 109 N. Y. S. 574; Laubach v. Laubach, 73 Pa. 387; Lare v. Westmoreland Specialty Co. 155 Pa. 33, 25 A. 812. The last case cited was one for deceit, but there had been rescission.

Defendant thinks Sheer v. F. P. Harbaugh Co. 165 Minn. 54, 205 N. W. 626, rules the question in his favor. However a mere glance at that opinion shows the matter of interest not involved. It was an action for damages, and it was held that rescission precludes a suit for damages. The principle governing rescission is that the parties are to be placed in statu quo, and it seems this can best be accomplished in a case involving the sale of corporate stock by requiring a return of the price paid with interest from the time of payment, and allowing as an offset against that sum dividends, if any, received by the vendee with interest thereon from the time received.

But we do not consider that defendant is in the position of a vendor, or that he can be sued by plaintiff for money had and received where the sale made through him has been rescinded. The complaint alleged that defendant was in the "investment brokerage business," and the evidence is conclusive; in fact plaintiff proved that the stock she bought was stock not owned by defendant or by the corporation, but by a third party; that this third party received the purchase price; that when plaintiff undertook to rescind, this owner accepted a return of the stock and returned to her the money he received upon its sale. If the parties to a sale rescind, the

broker or agent through whom the sale was effected does not be-come obligated to place the parties in statu quo. After a sale is made the agent or broker has no authority to rescind in behalf of either party. And it is self-evident that the rescission vel non, or by agreement of the parties to the sale, creates no liability against the agent. Before rescission, before plaintiff turned over the stock to defendant, and before she accepted the $1,500, she knew that he was a mere broker or agent of the vendor. In that situation plain-tiff cannot successfully urge that by presentation to defendant of her letter, wherein she declared the sale rescinded and demanded a return of her money with interest, a contract between her and defendant was concluded, on the hypothesis that if the stock was accepted then a promise could be implied on the part of defendant, the broker, to pay what was demanded in the letter.

Upon this record we conclude that a recovery must rest upon proof of an express contract on the part of defendant to pay it personally. Defendant contends he was entitled to a directed ver-dict. If that be true the order denying a new trial should not be disturbed because of any error in the charge. The only evidence of any express agreement to pay interest to be found is this testimony of plaintiff's husband, who acted as her agent in all that related to the sale and rescission:

"It was on the 15th of March, 1930. It was on a Saturday, about 12 o'clock during the noon hour, Will Kerfoot came into my office with a cashier's check for $1,500. That cashier's check was drawn on a Minneapolis bank, I think it was the Metropolitan National, and it was payable to Paul S. Kerfoot & Company and indorsed by Paul S. Kerfoot & Company, and Mr. Will Kerfoot laid that check on my desk in front of me with a receipt, and I turned to him and said to him, 'What about the interest?' He said, 'I will get you that in a few days.' I said then that I wouldn't give him a receipt in full but I would give him a receipt for the $1,500. He said all right, and I did that."

His testimony was also that defendant had personally made no promise regarding interest.

Assuming now that Will Kerfoot, in charge of defendant's office, had authority to make an agreement in behalf of defendant, we think it clear that the above words cannot be construed into an agreement by or on behalf of defendant personally to pay what the vendor, if anyone, ought to have paid. At most they express a promise to attempt to get the interest from someone else. We do not overlook that plaintiff's offer to have the witness relate subsequent interviews with Will Kerfoot was, on objection, excluded and exception taken. But since there was no disclosure as to what Mr. Kerfoot stated in these subsequent talks, it cannot be said there was error in the ruling. Under the situation, to the knowledge of plaintiff's husband, the language which he quotes Will Kerfoot as saying cannot be found by a jury to be a binding agreement on behalf of defendant to pay interest which he was under no obligation to pay in virtue of the rescission of the stock sale by the parties thereto.

The order is affirmed.

WILSON, C. J. (dissenting).

I dissent. I think there was a jury question.

HILTON, J. (dissenting).

I dissent. I think there should be a new trial because of an error in permitting William Kerfoot, over objection, to answer a question as to his authority to make a certain proposal on behalf of defendant. Whether there was such authority was a question for the jury. Also, a requested instruction that authority to act for the defendant might be proved by circumstantial evidence was improperly refused.