# FRANK C. VIEBAHN AND ANOTHER v. GERALD T. GUDIM AND OTHERS.
## WALTER R. DAVIS AND ANOTHER, RESPONDENTS.

142 N. W. (2d) 80.

April 15, 1966—No. 39,667.

*Shanedling, Phillips, Gross & Aaron,* for appellants.

*Byron W. McCullagh,* for respondents Viebahn.

*Gault, MacKenzie & Gustafson,* for respondents Davis.

Otis, Justice.

This is an action to rescind the purchase of a motel. Plaintiffs allege the gross income was misrepresented by the owners and their broker. An advisory jury found the agent guilty of fraud but exonerated the vendors who were, however, held vicariously liable by the court. This appeal is brought by the agent only. Neither the purchasers nor the vendors have cross-appealed. The purchasers have sought review of their right to interest as an offset against rent.

The controlling issues are whether or not, prior to the time the transaction was closed, the vendors disclosed to the purchasers an error in the amount of gross income they initially claimed the motel business earned during the previous year; and if there was a disclosure, whether or not there was a substantial variance between the corrected gross income figure furnished by the owners and the actual gross income found by the court. We have concluded as a matter of law that if the vendors made such a disclosure the purchasers were not justified in relying on the previous misinformation furnished by the agent, and under such circumstances the agent cannot be held liable.[1] But if the vendors did not disclose substantially correct figures to the purchasers before the sale became final, they were guilty of fraud as a matter of law.[2] Since we find both the special verdict of the jury and the conclusions of the court to be perverse, the matter is remanded to permit the court to reconcile them in amended findings of fact, conclusions of law, and order for judgment.[3]

In June 1963, the plaintiffs, Frank and Marjorie Viebahn, consulted defendant Gudim Realty, Inc., with a view to purchasing a motel.

---

[1] No misrepresentation concerning expenses has been adequately presented or proved. Plaintiff Marjorie Viebahn admitted at the trial that this was an afterthought. The issue was not raised by the pleadings. As to the unjustified reliance on the prior gross income figures, see Restatement, Torts, §§ 537 and 541.

[2] See, King v. International Lbr. Co. 156 Minn. 494, 497, 195 N. W. 450, 451; Thomas v. Murphy, 87 Minn. 358, 361, 91 N. W. 1097, 1098.

[3] Ayer v. Chicago, M. St. P. & P. R. Co. 187 Minn. 169, 244 N. W. 681; Tiedje v. Haney, 184 Minn. 569, 239 N. W. 611; Booth v. Spindler, 261 Minn. 79, 86, 110 N. W. (2d) 889, 894.

Gudim showed the plaintiffs a brochure describing a motel in St. Peter, Minnesota, owned by defendants Walter and Teresa Davis. The brochure stated, among other things, "gross income is $19,000 annually," and listed specific expenses which did not purport to be comprehensive. It did not state the annual net income. At the upper right-hand corner of the brochure in capital letters was typed: "All information is approximate." Although the plaintiffs concede that Gudim gave as his source of information data obtained from the Davises, plaintiffs base their claim of fraud not only on the fact that the gross income did not approach $19,000 but on assurances given by Gudim that he had made an independent investigation to confirm that figure.

The plaintiffs in July drove to St. Peter with a representative of Gudim to view the premises and confer with the Davises to determine more accurately the monthly gross income. It appears that the amount represented was either $18,513 or $18,724, to which the plaintiffs assert the Davises subsequently added approximately $300. On July 17, 1963, an earnest money contract was entered for the sum of $105,000. Thereafter, there was a conference between plaintiffs and the Davises out of which this controversy arose.

The Davises testified that following the execution of the earnest money contract, they obtained from their accountant an accurate statement of the gross income for the previous year showing it to be $17,379.52. The accountant took the stand and corroborated them. The Davises stated that on one of plaintiffs' visits the plaintiffs were advised that the audit disclosed a mistake in the income previously represented to them and plaintiffs were shown the corrected ledger and the figure of $17,379.52 submitted by the accountant. The Davises testified that at that conference Frank Viebahn said:

"Well, we are not going to be too technical about those figures; we are not going to worry too much about them. All we want is to see some figures that we can make our payment and get along."

He said he was satisfied. We think it is significant that he did not take the stand to deny this conversation although both he and Marjorie Viebahn denied generally having been given any information regarding the lower gross income figure.

As a part of the earnest money contract the following conditions were attached:

"This contract is to be void and note described on reverse hereof is to be returned to purchasers in the event:

"1.  Motel books fail to show a gross income of at least $18,500.00 during the last fiscal year of said motel.

"2.  In the event purchasers are forced against their will to complete the purchase of Lita's Motel * * *. This paragraph will be void upon the closing of the purchase of the St. Peter Motel."

On July 31, 1963, the following waiver was executed by the plaintiffs:

"Contingencies described on the reverse of Contract for Sale of Real Estate dated July 17, 1963 are hereby voided, and we now agree to purchase the St. Peter Motel without reservation, subject of course to title inspection indicating fee ownership in Schwartz, as well as Shepitis/Bartell/Davis equity."

Marjorie Viebahn testified on direct examination that Gudim induced the execution of the waiver by representing that it had to do only with the agreement the plaintiffs had entered for the purchase of Lita's Motel and that he did not mention its effect on the condition regarding gross income. However, she acknowledged that in a previous deposition she stated that Gudim had then also talked about the condition pertaining to income. Frank Viebahn, on the other hand, admitted that he knew what he was signing when he waived the income condition and that the matter was discussed at the time of its execution. This testimony was consistent with his admission that at one time he had stated he needed $17,000 gross income per year in order to make a success of the venture.[4]

---

[4] In denying motions by defendants for summary judgment, the trial court attached the following memorandum:

"It does not clearly appear from the depositions whether the plaintiffs relied mainly on Gudim or the Davis' for all of the information upon which they based their decision to purchase the motel. This Court would be inclined to agree that the difference between the claimed income of $18,724.00 and the actual income of $16,490.00 would not amount to a substantial variance were it not for the fact that plaintiff Frank C. Viebahn considered $17,000.00 as the breaking point. That, of course, would also be an issue for the jury."

The sale was closed on August 12, and on August 17 the plaintiffs took possession. It is undisputed that by September 4 they became dissatisfied with the transaction and expressed to the defendants their desire to rescind because they said the previous year's gross income was not as represented but amounted to only $16,498.20. Nevertheless, on cross-examination, Marjorie Viebahn acknowledged that on September 18 she told Gudim she thought he was honest and that she "didn't blame him." Frank Viebahn echoed his sister's vindication of Gudim in a deposition wherein he admitted that if there was any misrepresentation it was that of the Davises. He did not rebut testimony of the Davises that within a week and a half he had asked them to rescind the transaction because running the motel made him "nervous" and he wished to return to California.

After being out all night, the jury brought in a 5⁄6 verdict finding defendant Gudim guilty of fraud and exonerating the Davises. Since the jury was advisory only, the court made its own findings, adopting in its conclusions of law the jury's determination of the fraud issue with respect to the Davises. The court found that Gudim made representations regarding gross income and net profits for the prior fiscal year which were false, without knowing whether they were true, and that the plaintiffs relied on those representations. Since Gudim was acting as an agent for the Davises, the court held all the defendants liable. However, in entering judgment the court directed that Gudim restore to plaintiffs the amount of commission he had been paid and ordered the Davises to reimburse them for the balance of the amount received under the contract for sale. While this disposition was practical and expedient, and no complaint is made of it, clearly if plaintiffs were entitled to anything, judgment should have been entered in the full amount against all defendants.

■ Because the verdict and findings are perverse, the matter is remanded for reconsideration by the trial court and an appropriate amendment of its findings.

The court will make specific findings with respect to whether or not before the time of closing on August 12, 1963, Mr. and Mrs. Davis disclosed to the plaintiffs the contents of both the ledger for the previous

year and defendants' exhibit 10 which contained the gross income figure of $17,379.52 arrived at by their accountant; and whether at that time they advised plaintiffs of the fact that the previous income figure of $18,513 or $18,724 was erroneous.

If the Davises made such disclosure to plaintiffs, we hold as a matter of law the plaintiffs were not entitled to rely on any previous misrepresentations made either by defendant Gudim or by the Davises, and the court will order judgment for the defendant Gudim. In addition, under those circumstances, the court will determine the actual gross income for the previous year and whether it represented a substantial variance from the figure the Davises disclosed. In the event the trial court finds that the Davises failed to make such disclosures, or if made and they substantially varied from actual gross income, we hold the Davises are guilty of fraud as a matter of law, and the court's findings of fact, conclusions of law, and order for judgment will be amended accordingly.

■ The plaintiffs were in possession of the motel from August 17, 1963, to the end of December. The trial court apparently treated the monthly payments called for in the contract as the fair rental value and deducted the sum of unpaid installments from the total payments made by plaintiffs, without computing interest.

Upon a remand the court will make specific findings with respect to the rent due the Davises and the interest due the Viebahns, and the conclusions of law and order for judgment will be amended accordingly.

Remanded with directions.