Elda C. **BRINK**, Respondent,

v.

Richard D. **LARSON**, et al., Defendants and Third Party Plaintiffs, Appellants,

Duane Amundson, individually, and d.b.a. Amundson and Associates, et al., Third Party Defendants, Respondents.

No. C9–87–19.

Court of Appeals of Minnesota.

Sept. 8, 1987.

---

Ronald R. Frauenshuh, Sr., Paynesville, for respondent.

Douglas B. Meslow, St. Paul, for appellants.

James G. Weinmeyer, St. Paul, for respondents.

Heard, considered and decided by LESLIE, P.J., and SEDGWICK and LANSING, JJ.

## OPINION

LANSING, Judge.

This appeal involves the sale of Van's Beach Resort, a commercial property. Respondent Elda Brink sued appellants Richard and Violet Larson for damages or for rescission of the contract for deed, alleging fraud and misrepresentation. The Larsons brought a third-party claim for indemnity against the realtor, Amundson and Associates. At the close of trial the court granted the realtor's motion for a directed verdict, found that the Larsons made false representations on the boundary lines and the condition of the property, and rescinded the contract for deed. The court further found that the annual value of Brink's beneficial use and enjoyment of the property was $9,000.[1] The Larsons appeal only the finding of fraud as a basis for the rescission of the contract for deed, and Brink appeals the trial court's valuation of her use of the property. We affirm and remand for entry of judgment.

## FACTS

The Larsons sold Van's Beach Resort for $129,500 to Brink by contract for deed on September 17, 1983. Brink has paid a total of $48,000 on the contract for deed: $30,000 down, $12,000 in 1985 and $6,000 in 1986. Currently Brink is in possession of the property.

Brink inspected the property three times before signing the contract for deed. The first time Brink saw the property, she and her husband, LuVerne, were shown the boundaries by Helen Peterson, the Larsons' realtor. Relying on information given to her by the Larsons, Peterson showed Brink the boundary lines and told her that

---

1. The trial court's finding appears to read that the annual fair rental value was $6,000. However, a close reading of the entire paragraph shows that $6,000 is the net of $9,000 fair rental value offset by $3,000 interest.

an underground gas tank and a red portable storage building were on the property.

On her second visit, Brink and her husband brought their daughter and son-in-law, Donald Porter, to inspect the property. Porter testified that he saw Richard Larson point out the boundaries of the property. On Brink's final visit to the resort, her son and daughter-in-law inspected the property.

Richard Larson testified, "I told [Brink] what I thought [the boundary lines] were, but I said that I didn't know there was a stake or anything that I could find." Bork, the former owner, knew exactly where the boundary lines were. Bork testified that an addition to the resort had been cut off because the boundary line was different from what he originally thought. Bork also testified that when he sold the property to the Larsons, he told them where the boundary lines were.

Brink testified that she was told there were 150 feet of lakeshore. The listing agreement, prepared by the realtors with information supplied by the Larsons, states that there are 134 feet of lakeshore. A survey done subsequent to Brink's purchase reveals there are only 119 feet of lakeshore and that the building extends four inches onto Paynesville Township property. The survey also showed that the well, septic drain fields, underground gas tank, red portable storage building, and a redwood deck and sidewalk adjoining apartment "D" are all on Paynesville Township property.

The listing agreement listed the interior and exterior condition of the property as "good." The Larsons told Brink that the building and personal property were in "good" condition. Between the time Brink signed the purchase agreement and the time she signed the contract for deed, a storm damaged the property. The Larsons assured Brink they would restore the property to the same condition it was in prior to the storm.

The Larsons told Brink that the septic tank had to be pumped annually. Brink testified that she had to pump the tank at least monthly. The Larsons told Brink the roof had just been repaired. Brink testified that the roof leaks in multiple locations. The Larsons told Brink the boat motors were in good running condition. However, Bill Legatt of Lathes Marine testified that he told Richard Larson two years ago that the boat motors were worn out and had to be replaced. Vern Johnson of Vern Johnson Motors testified that he worked on the motors in the fall of 1983 and that when they left his shop, the boat motors were in "good running condition." The Larsons also testified that they told Brink the boat ramp heaved due to ice in the winter, but that it was repaired. The boat ramp cracked and heaved up six feet. In addition, the hot water tank bottom fell out, the water line needed substantial repairs or replacement, the concrete patio on apartment "D" was improperly installed and cracked, the floor in at least one of the units had rotted, and the vacuum cleaner and popcorn machine did not operate properly.

The only repairs that were ever done to the property during the six years that the Larsons owned the property were repairs to the roof over a couple of apartments, purchase of a new refrigerator and a used stove, and the placement of a redwood patio off apartment "D".

## ISSUES

1. Did the trial court err in permitting rescission of the contract for deed based on a finding of false representations on the boundary lines and the condition of the property?

2. Did the trial court abuse its discretion in finding that the annual value of Brink's beneficial use and enjoyment of the property was $9,000?

## ANALYSIS

### I

■ In *Weise v. Red Owl Stores, Inc.*, 286 Minn. 199, 202–03, 175 N.W.2d 184, 187 (1970), the Minnesota Supreme Court identified 11 elements that must be proved in order to establish a cause of action for fraudulent misrepresentation. Of these elements, the Larsons dispute three: the mis-

representation of a past or present fact, Brink's reliance on any misrepresentation, and damages resulting from any misrepresentation.

The trial court made specific findings on each of these elements. The findings were based on the testimony at trial and necessarily involved determinations that are within the province of the factfinder.

In *Tonka Tours, Inc. v. Chadima*, 372 N.W.2d 723 (Minn.1985), the Minnesota Supreme Court stated the standard of review in appeals from a trial court judgment:

> [W]hen the lower court is the trier of fact, its findings on disputed questions are entitled to the same weight as a jury verdict and will not be upset merely because a reviewing court may view the evidence differently. The findings must be manifestly contrary to the weight of the evidence or not reasonably supported by the evidence as a whole.

*Id.* at 726 (citations omitted); *see* Minn.R. Civ.P. 52.01 ("due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses").

The court found that the Larsons made specific representations that the property included 150 feet of lakeshore, that the building was in good condition and the roof had been repaired, that the plumbing and septic system were in good operable condition and needed to be pumped only once a year, and that the personal property used for the business, including boat motors, was also in good condition. The court further found that Brink relied on these representations in purchasing the property and was damaged because they were not true. The findings are not contrary to the weight of the evidence; they are reasonably supported by the record as a whole. The trial court did not err in rescinding the contract for deed.

## II

■ Brink argues that the trial court abused its discretion in finding that the annual value of her beneficial use and enjoyment of the property was $9,000.

The Minnesota Supreme Court, in *Gethsemane Lutheran Church v. Zacho*, 258 Minn. 438, 443, 104 N.W.2d 645, 649 (1960), held that in the suit for rescission of a contract, the court should award any relief to which the defendant may be equitably entitled. The supreme court has also held that when rescission is granted, the sellers are entitled to the fair rental value of the property for the period in which the buyers were in possession and the buyers are entitled to interest on the amount they have paid the sellers. *Viebahn v. Gudim*, 273 Minn. 504, 509, 142 N.W.2d 80, 84 (1966). A vendee who has rescinded for good cause may recover the purchase price with interest from the time of payment. *Dohs v. Kerfoot*, 183 Minn. 379, 380, 236 N.W. 620, 621 (1931). This interest may be offset against the fair rental value of the property. *Viebahn*, 273 Minn. at 505, 142 N.W.2d at 81.

The trial court calculated the annual fair rental value by taking the actual market value of the property ($90,000), multiplied by the interest rate agreed upon by the parties (10 percent) to arrive at an annual fair rental value of $9,000. The court then allowed Brink a $3,000 annual offset because the Larsons had the beneficial use of the $30,000 down payment, the annual value of which is $3,000 ($30,000 × 10 percent interest). Although the computation is selective in that it neither credits Larsons with interest for the annual rental value, nor Brink for the interest on the additional $18,000 in payments, it does have an equitable basis. We cannot say the trial court abused its discretion by valuing Brink's beneficial use and enjoyment of the property at $9,000 annually or by permitting the offset of interest computed on the down payment.

## DECISION

The trial court properly rescinded the contract for deed. The Larsons are entitled to $9,000 for each of the four years Brink had possession, a total of $36,000. Brink is entitled to interest on the $30,000 down payment for four years, plus the refund of the $48,000 she paid, a total of $60,000. We remand to the trial court to

enter judgment for Brink in the amount of $24,000.

Affirmed and remanded.