**MCC INVESTMENTS, Appellant (C2–89–903), Respondent (C3–89–912),**

v.

**CRYSTAL PROPERTIES, et al., defendants and third-party plaintiffs, Respondents (C2–89–903), Appellants (C3–89–912),**

v.

**Scott J. MANN, d/b/a Scott J. Mann Real Estate, Third–Party Defendant.**

**Nos. C2–89–903, C3–89–912.**

Court of Appeals of Minnesota.

Feb. 6, 1990.
Review Denied March 27, 1990.

---

Eric J. Magnuson, Rider, Bennett, Egan & Arundel, Minneapolis, Marvin A. Liszt, Ince and Liszt, P.A., Bloomington, for MCC Investments.

James D. Olson, Tammy L. Pust, Cindy J. Larson, Best & Flanagan, Minneapolis, John L. Weyland, Jensen, Weyland &

McCloskey, Brooklyn Park, for Crystal Properties, et al.

Considered and decided by KLAPHAKE, P.J., and PARKER and FOLEY, JJ.

## OPINION

FOLEY, Judge.

Appellant MCC Investments originally brought suit against respondent Crystal Properties for specific performance of a contract for deed. Crystal Properties counterclaimed for rescission, alleging fraudulent misrepresentations. In the first action, the trial court found that MCC had made false representations which were material to the transaction, but concluded that Crystal Properties was not entitled to rescission because the parties could not be restored to the status quo ante. In the first appeal, we agreed with the finding of fraud but reversed, holding that rescission was appropriate. *See MCC Investments v. Crystal Properties*, 415 N.W.2d 908 (Minn. Ct.App.1987), *pet for rev. denied* (Minn. Feb. 12, 1988). We remanded the case to the trial court for an accounting and an equitable distribution of MCC's burden of increased mortgage payments.

On remand, the trial court referred the matter to a court-appointed Neutral, whose findings of fact and conclusions of law were adopted by the trial court. Thereafter, both parties moved for amended findings or new trial. An amended final judgment was entered and both parties filed separate appeals from that judgment. Those appeals were consolidated by this court. We affirm in part, reverse in part, and remand.

## FACTS

On November 14, 1984, Crystal Properties and MCC entered into a contract for deed for the purchase of a commercial office building, commonly known as the 5700 Building, in the city of Crystal. Shortly after the closing, Crystal Properties learned that MCC had falsely represented that a major tenant, Milo Architects, was paying rent and was current on rental pay-

ments. In fact, Milo was two years in arrears in rent payments. After taking possession, Crystal Properties unsuccessfully attempted to collect rent and eventually was forced to evict Milo. Crystal Properties made payments on the contract for deed through July 1985 and thereafter informed MCC that it was seeking rescission. In the first appeal, we held rescission was an appropriate remedy where the parties could be restored as nearly as possible to the status quo and where the impossibility of completely restoring the status quo was the result of the seller's wrongdoing.

Following the remand for an accounting, the trial court appointed a Neutral to hear evidence on the rescission. At that time, both parties submitted evidence pertaining to the fair rental value of the property.

MCC offered the testimony of appraiser Richard Ruppert. Ruppert's appraisal established the fair market value of the property through the correlation of three appraisal techniques: the cost approach; the market approach; and the income approach. Ruppert estimated the fair market value of the property as of November 1984 at $1.1 million.

Crystal Properties offered the testimony of expert Howard Lawrence, who estimated the fair market value of the property to be $685,000. Lawrence used the actual rental and occupancy figures for the property in making his estimate.

In making the determination on the values to be paid for purposes of restoring the status quo, the Neutral applied the rescission fair rental value formula used in *Brink v. Larson*, 411 N.W.2d 585, 588 (Minn.Ct.App.1987). The court determined $1.1 million to be the fair market value and multiplied that figure by the 8% interest rate in the contract for deed ($88,000). After dividing that figure by 12 ($7,333), multiplying by the 39½ months of occupancy ($285,987), and adding 8% interest for 47 months ($53,384.24), the fair rental value was found to be $343,235.

MCC had an existing mortgage on the property which contained a standard due-

on-sale clause. MCC did not disclose to the mortgage company that the property was being sold. When the mortgagor discovered the sale, it invoked the clause. To avoid paying off the entire mortgage, MCC negotiated an increase in the interest rate on the mortgage from 9% to 12%, thereby obligating MCC to pay an additional $46,952.98 in interest. The trial court found that because the due-on-sale clause was invoked soon after the transfer of the property, Crystal Properties should bear 50% of the obligation, or $23,476.49.

On November 14, 1984, Crystal Properties demanded and received from the real estate agent for the project a rebate of $5,000 from that agent's commission. The $5,000 was given by that agent as an incentive to close the transaction when Crystal Properties had concerns about the cost of certain renovations. The trial court found that Mahendra Nath, a partner at Crystal Properties, had received $5,000 plus 8% interest for a total of $6,583.18. That amount was to be returned to MCC.

The trial court also found that Crystal Properties had made capital improvements to the property in the amount of $92,525 plus 8% interest of $14,940.20 for a total of $107,466.20. That amount was to be returned to Crystal Properties.

Finally, the trial court did not allow MCC to recover payments of real estate taxes made to avoid tax forfeiture.

### ISSUES

1. Did the trial court err in using the projected economic return of the property to calculate the fair rental value?

2. Did the trial court err in awarding Crystal Properties its cost of improvements?

3. Did the trial court err in not allowing MCC to recover its payment of real estate taxes?

4. Did the trial court err in requiring Crystal Properties to bear 50% of the increased mortgage costs imposed because of a due-on-sale clause in the underlying mortgage?

5. Did the trial court err in requiring Crystal Properties to return a real estate broker's commission?

### ANALYSIS

Under Minn.R.Civ.P. 52.01, findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous. The findings of the trial court, as the trier of facts, are given the same weight as a jury verdict and may not be reversed on appeal unless manifestly and palpably contrary to the evidence. *Costello v. Johnson*, 265 Minn. 204, 211, 121 N.W.2d 70, 76 (1963). A trial court's conclusions of law are not binding on the appellate court. *A.J. Chromy Construction Co. v. Commercial Mechanical Services, Inc.*, 260 N.W.2d 579, 582 (Minn. 1977).

■ 1. The trial court found the reasonable rental value of the property to be $343,235. To arrive at the fair rental value, the Neutral applied the formula suggested in *Brink* and used appraiser Ruppert's estimate of a $1.1 million fair market value in the calculation. Crystal Properties contends the trial court erred in determining that the fair market value of the building was $1.1 million and further that the trial court erred in its application of the *Brink* formula. Crystal Properties contends that a return to the status quo requires using the actual rental income received. We agree.

The sequence of events here occurred because of misrepresentations by MCC. Before executing the contract for deed, Mahendra Nath asked to review the lease files and rent rolls. MCC provided copies of leases and rent rolls from August through October 1984, as well as a rent roll projection for November 1984 through January 1985. All of the rent rolls and projections provided by MCC contained a representation that Milo was current in its rent payments. MCC's property manager, however, knew Milo had not paid its rent when she prepared the rent roll. MCC discussed with Nath that Milo was delinquent in its rent but did not disclose that Milo was two years behind on the payments. MCC also

failed to disclose that it had obtained a judgment against Milo for past due rent in the amount of $45,827. *See MCC Investments*, 415 N.W.2d at 909.

■ It is not the purpose of rescission to award to the offending party a windfall when that party's conduct has occasioned the rescission. Rescission requires that a party return what he has received under a contract.

"That a party seeking rescission of a contract must return, or offer to return, what he has received under it, and thus put the other party as nearly as is possible in his situation before the contract, is the law. *But this rule is wholly an equitable one; impossible or unreasonable things, which do not tend to accomplish equity in the particular transaction, are not required.*"

*Beck v. Spindler*, 256 Minn. 565, 566, 99 N.W.2d 684, 685 (1959) (quoting *Proper v. Proper*, 183 Minn. 481, 484, 237 N.W. 178, 179 (1931)) (emphasis added). We held in the previous appeal that

Crystal Properties is able to restore to MCC all that it received under the contract for deed. It can restore possession of the building and fee title exactly as MCC held it prior to the transaction, as there are no additional liens or encumbrances. *Crystal Properties can also restore all rental income and damage deposits which it has received since acquiring the building.*

*MCC Investments*, 415 N.W.2d at 911 (emphasis added). A return to the status quo here requires a determination of the actual rental income of the property.

First, we conclude the trial court relied on an appraisal based on projection and unreliable facts. Ruppert's appraisal of fair market value was based primarily on the market approach and the income approach. In the market approach, he analyzed sales of other properties "similar in utility and use to the subject property." Under the income approach, he analyzed "the anticipated net income" to determine "the capital amount of investment required to produce such an income." His appraisal stated that a prime consideration in that approach was "the income potential" of the property. As a result, his opinion estimated what the property is capable of producing, not the income that it actually had produced.

Ruppert's testimony and his appraisal report show that his opinion was based in part upon rent roll projections previously prepared by MCC. Those projections were found to be false by the trial court in the earlier action. *See MCC Investments*, 415 N.W.2d at 910. Further, while those projections estimated rentals of $17,000 per month, Richard MacDonald, a partner at MCC, testified that the property did not consistently produce net rent per month in excess of $8,000. Ruppert also based his opinion on the belief that the building was properly managed. MacDonald testified that he did not manage the property the way he felt it should have been managed. Finally, Ruppert's opinion was based on a 5% vacancy rate, and he admitted that he did not know the property had a 25% vacancy rate when sold to Crystal Properties.

■ An expert's opinion based on speculation and conjecture has no evidentiary value. *Albert Lea Ice & Fuel Co. v. United States Fire Insurance Co.*, 239 Minn. 198, 203, 58 N.W.2d 614, 618 (1953). If the facts upon which such an opinion is based are unreliable, the opinion is unsound and a verdict based on that opinion cannot stand. *State v. Gannons Inc.*, 275 Minn. 14, 19, 145 N.W.2d 321, 326 (1966). Ruppert's opinion was based on false projections, and we find the trial court erred in relying on this opinion to determine actual rental value.

Second, the calculation of the fair rental value of the property in this case utilized the formula suggested in *Brink*. In *Brink*, we affirmed the trial court's rescission of a contract for deed for the purchase of a resort property where the vendors made false representations regarding the boundary lines and condition of the property, and the purchaser relied on those representations. The trial court multiplied the *actual market value* of the property by the interest rate agreed upon by the parties to arrive at an annual fair rental

value. *Brink*, 411 N.W.2d at 588. Here, the trial court applied that formula using Ruppert's estimate of fair market value.

While it is arguable that in a proper case the *Brink* formula would be followed, it is not appropriate in the present case. Here, the appropriate measure for restoring the parties to the status quo must use the actual rental value of the property. A calculation based upon fair market value is unnecessary where evidence of actual rental values is available. This relief prevents the wrongdoer MCC from receiving "the windfall benefit of [its] wrongful conduct." *Estate of Jones v. Kvamme*, 449 N.W.2d 428, 432 (Minn.1989). To apply any other standard is to provide MCC with a windfall not contemplated by our first decision.

2. MCC challenges the award to Crystal Properties of its cost of improvements. MCC argues that no record of enhanced value to the property was established through these improvements. It further argues that some improvements were nothing more than repairs.

■ A purchaser is entitled to recover the reasonable value of any improvements it has made to the property prior to the rescission. *Tompkins v. Sandeen*, 243 Minn. 256, 259, 67 N.W.2d 405, 408 (1954). The purpose of compensating the vendee is to prevent the unjust enrichment of the vendor, who receives the improvements with the return of the property.

■ The majority of the improvements here were incurred as inducements to prospective tenants, including one who is currently the building's largest tenant. Most of the existing rents are directly attributable to those improvements and would not have been received but for those improvements. Furthermore, MCC was at fault in the original transaction, and it would be inequitable to allow MCC to retain the benefit of these improvements without restitution. *See* Restatement of Restitution, § 42(3) comment e (1937) (the amount of restitution granted depends upon the fault of the parties; if the transaction was the result of fraud or misrepresentation, restitution is granted up to the value of the services and materials although it is great-

er than the value added to the property). Crystal Properties submitted evidence of its improvements and the trial court did not err in its award.

3. MCC next claims that the trial court erred in determining it is not entitled to recover its payments of real estate taxes made to avoid the accrual of liens and tax defaults.

■ After Crystal Properties informed MCC that it sought rescission, it continued to make real estate tax payments to MCC from December 1985 through June 1986. At that point, MCC began paying the taxes. The trial court stated in its memorandum to the final amended judgment that

> these payments were made to avoid tax forfeiture of premises later transferred to [MCC] by defrauding purchasers. The payments were for the sole benefit of [MCC]; it should bear them.

We agree.

If MCC had not defrauded Crystal Properties, it would have been required to pay all those taxes in order to protect its interest, as a tax lien prompted by the vendee would attach to the fee itself. If Crystal Properties had continued to pay the taxes, it would have been entitled to receive that amount back in the rescission.

■ MCC argues that the statement in the memorandum is in conflict with the trial court's findings and therefore is not controlling. The findings made on the remand incorporate by reference the trial court's findings of November 1986. Findings 17 and 36 in the trial court's original decision set forth the amount of real estate taxes Crystal Properties was required to pay pursuant to the terms of the contract for deed. However, when a contract is rescinded, no provisions remain in force to bind either party. *Koch v. Han–Shire Investments Inc.*, 273 Minn. 155, 167, 140 N.W.2d 55, 63–4 (1966). Here, the contract for deed is extinguished and no inconsistency remains.

■ 4. Crystal Properties challenges the trial court's apportionment of the increased mortgage costs imposed because of

the due-on-sale clause in the underlying mortgage. Crystal Properties argues on appeal that it should have no responsibility for the increased mortgage cost during the pendency of the transaction.

When this case was remanded, we directed the trial court to distribute MCC's burden of increased mortgage payments equitably between the parties. *See MCC Investments,* 415 N.W.2d at 912. The trial court divided the payments equally. Application of equitable relief is within the discretion of the trial court and should be reversed only upon a clear abuse of that discretion. *Nadeau v. Ramsey County,* 277 N.W.2d 520, 524 (Minn.1979). We do not disturb the trial court's exercise of its equitable power in apportioning these costs.

5. Finally, Crystal Properties argues the trial court erred in requiring it to return a broker's commission in the amount of $5,000 plus interest.

The trial court directed that the entire sum of the purchase price be returned on rescission. The broker's commission was taken out of the closing funds paid by Crystal Properties. While Crystal Properties would have been credited with paying a certain amount to MCC at the closing, MCC actually would have received a lesser amount due to the subtraction of the broker's commission. Therefore, when Crystal Properties received the $5,000 back from the broker, it was taking back $5,000 of the purchase price for which it was credited at the closing. If the trial court had not credited MCC with this sum, Crystal Properties would have received a return of the $5,000 and credit for the same $5,000 on rescission. We find no error here.

## DECISION

We reverse the trial court's determination of fair rental value and remand for a determination of the actual rental income received from the property. We affirm the trial court in all other respects.

Affirmed in part, reversed in part and remanded.