1998 ND 223

**Karen L. BARKER a/k/a Karen L. Violet, Plaintiff and Appellant,**

v.

**Jan M. NESS and Cynthia K. Smith, Defendants and Appellees.**

**Civil No. 980145**

Supreme Court of North Dakota.

Dec. 22, 1998.

Michael S. McIntee of McIntee Law Firm, Towner, ND, for plaintiff and appellant.

Harris P. Kenner of Kenner Sturdevant Peterson & Cresap, Minot, N.D., for defendants and appellees.

NEUMANN, Justice.

[¶ 1] Karen Barker appeals from the judgment of the district court rescinding the sale of a home and ordering Jan Ness and Cynthia Smith to pay Barker $33,830.87. We affirm the judgment of the district court and remand for a redetermination of restitution consistent with this opinion.

I

[¶ 2] In 1991, acting as the personal representative for the Estate of Marian Groninger, Jackie Barnett sold a house under a contract for deed to Gerald and Lailone Hyatt. Under the contract for deed, Barnett included a section entitled "Condition of Premises" in which mention is made of a water problem in the basement. Subsequently, Ness and Smith purchased the estate and Hyatt's interests in the home and received the contract for deed which contained the "Condition of Premises" section.

[¶ 3] On July 14, 1993, Ness and Smith sold the home to Barker for $40,000. On March 28, 1996, Barker filed a complaint in district court, alleging Ness and Smith had fraudulently misrepresented the condition of the home as to its structural integrity and water problems in the basement.

[¶ 4] In March 1998, after a bench trial, the district court entered judgment in favor of Barker. The district court concluded the sale of the home should be rescinded. The district court ordered Barker, under N.D.C.C. § 9–09–04(2), to restore everything of value received during the ownership of the property to Ness and Smith; ordered Barker to return the property to Ness and Smith; and ordered Smith and Ness to pay Barker $33,830.87. The district court arrived at $33,830.87 by taking $44,855.87, Barker's total cost of the home, and subtracting the $11,025.00 in rental income received by Barker from the house, which under the judgment must be returned to Ness and Smith.

[¶ 5] Barker appeals the judgment, arguing the district court erred in denying her a jury trial and erred in reducing her restitution by the rental income.

II

[¶ 6] Barker argues she was denied the right to a trial by jury. Whether a party is entitled to a jury trial depends on whether the case is an action at law or a claim in equity. *Farm Credit Bank of St. Paul v. Rub,* 481 N.W.2d 451, 458 (N.D.1992). In an equitable proceeding there is no absolute right to a trial by jury. *Id.* Consequently, the dispositive question for the jury trial issue is whether Barker asserted an action at law or a claim in equity.

[¶ 7] Under the North Dakota Century Code, rescission appears in two chapters. Chapter 9–09 is entitled Extinction, Rescission, Alteration, and Cancellation. Under chapter 32–04, Specific Relief, three sections relate to rescission of a contract. Determining whether the proceeding is at law or in equity involves determining under which statutory provision the proceeding was commenced.

[¶ 8] An individual who has been induced to enter a contract for the purchase of real estate by fraudulent misrepresentation may elect to affirm the contract, in which case the property is retained and an action is brought for damages. *Schaff v. Kennelly,* 61 N.W.2d 538, 546 (N.D.1953) *overruled on other grounds by Hatch v. Hatch,* 484 N.W.2d 283 (N.D.1992) (overruling the proposition that North Dakota has no statute

which requires filing as a condition precedent to the making of a motion). Alternatively, an individual may elect to rescind the contract for fraud and restore everything of value received under the contract. *Id.* This decision is sometimes referred to as the Election of Remedies Doctrine. Dan B. Dobbs, *Law of Remedies* § 9.4, at 712 (2nd ed.1993).

[¶ 9] Under the Doctrine of Election of Remedies, a plaintiff is required to elect between two inconsistent remedies. *Fuller v. Fried,* 57 N.D. 824, 224 N.W. 668, 673 (1928). Although not confined to misrepresentation cases, the doctrine usually applies when a plaintiff has to choose between rescission or damage remedies. Dobbs, *supra* § 9.4, at 712. The plaintiff must elect either to sue for damages (affirm) or to rescind the contract (disaffirm) and seek the return of the consideration given. *Id.*

[¶ 10] A plaintiff who elects to rescind the contract then has two legal theories from which to choose in order to accomplish rescission. *Schaff,* 61 N.W.2d at 546. The plaintiff may choose to bring a claim in equity asking the court to cancel the contract under N.D.C.C. § 32–04–21. *Omlid v. Sweeney,* 484 N.W.2d 486, 489–90 (N.D.1992); *Sperle v. Weigel,* 130 N.W.2d 315, 318 (N.D. 1964); *Schaff,* at 546. Alternatively, the plaintiff may bring an action at law based upon an election to rescind and offer to restore under N.D.C.C. § 9–09–04. *Omlid,* at 489–90; *Sperle,* at 318; *Schaff,* at 546.

[¶ 11] Within chapter 9–09, N.D.C.C. §§ 9–09–01 to 9–09–04 are designed to accomplish a rescission at law. *See Omlid,* 484 N.W.2d at 489 (stating N.D.C.C. §§ 9–09–01 to 9–09–04 provide for a rescission at law). Compliance with the requirements of N.D.C.C. § 9–09–04 are conditions precedent to maintenance of an action for rescission at law. *Alton's, Inc. v. Long,* 352 N.W.2d 198, 199 (N.D.1984).

[¶ 12] To effect a rescission at law, the plaintiff must give notice to the defendant of the rescission and must make an offer to restore in compliance with N.D.C.C. § 9–09–04. *Schaff,* 61 N.W.2d at 546; *Long,* 352 N.W.2d at 199 (stating N.D.C.C. § 9–09–04 sets forth the statutory requirements governing rescission). Under this process, a plaintiff gives notice of intent to rescind and must offer to restore to the defendant what was given in the transaction, unless the offer to restore is obviated by an exception to the restoration rule. *Volk v. Volk,* 121 N.W.2d 701, 706 (N.D.1963) (stating an offer to restore is not required when nothing exists to restore or the party seeking rescission has received nothing of value).

[¶ 13] The restoration of the status quo as a requirement for rescission at law, though part of a legal action, is nevertheless based on the equitable principle that he who seeks equity must do equity. *Blair v. Boulger,* 358 N.W.2d 522, 523 (N.D.1984). The party seeking rescission cannot place conditions on the offer to restore except as permitted by N.D.C.C. § 9–09–04. *Id.* at 523. If the defendant refuses to comply with the request, the plaintiff may bring an action at law to recover restitution for what the plaintiff gave the defendant in the transaction. Dobbs, *supra* § 4.8, at 461–62. Because the plaintiff has restored the defendant to a pre-contractual position, the action is based *on* rescission, it is not one *for* rescission, and the court may render an ordinary judgment for what the defendant owes the plaintiff. Dobbs, *supra* § 4.8, at 462.

[¶ 14] The other legal theory available to a plaintiff is a claim in equity. Section 32–04–21, N.D.C.C., provides for rescission in equity. *Omlid,* 484 N.W.2d at 489–90; *Sperle,* 130 N.W.2d at 318. Section 32–04–21, N.D.C.C., provides:

The rescission of a written contract may be adjudged on the application of the party aggrieved:

1. In any of the cases mentioned in 9–09–02;

2. When the contract is unlawful for causes not apparent upon its face and when the parties were not equally in fault; or

3. When the public interest will be prejudiced by permitting it to stand.

[¶ 15] In pursuing equitable relief, the plaintiff is not required to make an offer of restoration to the defendant. *Kracl v.*

*Loseke*, 236 Neb. 290, 461 N.W.2d 67, 73 (Neb.1990); *see also Knaebel v. Heiner*, 663 P.2d 551, 554 (Alaska 1983) (stating because equitable rescission rather than legal rescission was sought, restoration was not required prior to suit by the plaintiff). As observed by Dobbs: "[i]n equity the suit is not *on* rescission, but *for* rescission, it is not a suit based upon the rescission already accomplished by the plaintiff, but a suit to have the court decree a rescission." Dobbs, *supra* § 4.8, at 463.

[¶ 16] However, the plaintiff does not retain what he received. It is a fundamental principle of equity that parties must be restored to their pre-contractual position. *Donovan v. Dickson*, 37 N.D. 404, 164 N.W. 27, 31 (1917). Therefore, once the trial court renders a formal rescission, it must restore each side to its respective pre-contractual position. Dobbs, *supra* § 4.8, at 463. Under N.D.C.C. § 32–04–23, "[o]n adjudging the rescission of a contract, the court may require the party to whom such relief is granted to make any compensation to the other which justice may require." As stated in *Donovan*:

A court of equity has wide and extensive powers. If there were no provisions in the statutes speaking upon the powers of the court of equity, such court would nevertheless have, and does have, inherent power to grant such relief in cases in which the equitable power of the court is invoked as to the court shall seem proper in order to do justice between the parties … to place the parties in status quo and do equity between them.

*Donovan*, 164 N.W. at 31.

[¶ 17] Sections 9–09–02 to 9–09–04 and 32–04–21 to 32–04–23, N.D.C.C., originate from the Civil Code of 1865. Laws of Dakota Territory §§ 839–841, 1903–1905 (1865). These sections were later re-enacted in 1877 without changes. Laws of Dakota Territory §§ 965–967, 2008–2010 (1877). Due to their Civil Code origins very similar language can be found in other states which adopted the Civil Code in the late 1800's. *See* William B. Fisch, *Civil Code: Notes for an Uncelebrated Centennial*, 43 N.D. L.Rev. 485, 485–86 (1967).

[¶ 18] South Dakota still maintains portions of the 1865 Civil Code, as adopted by Dakota Territory, in its current Codified Laws of South Dakota. Sections 53–11–3 to 53–11–5, S.D. Codified Laws, embody almost the same language as N.D.C.C. § 9–09–04. The South Dakota Supreme Court in applying chapter 53–11 has stated actions brought under that chapter are actions at law. *Knudsen v. Jensen*, 521 N.W.2d 415, 417 (S.D.1994). Similarly, S.D. Codified Laws §§ 21–12–1 to 21–12–3 are almost identical to N.D.C.C. §§ 32–04–21 to 32–04–23 respectively. The South Dakota Supreme Court has stated proceedings under chapter 21–12 are claims in equity. *Knudsen*, 521 N.W.2d at 417.

[¶ 19] California also adopted the Civil Code. Fisch, *supra*, at 485. Our current N.D.C.C. §§ 9–09–02 to 9–09–04 and 32–04–21 to 32–04–23 were derived from pre–1961 Cal. Civil Code §§ 1689–1691, 3406–3408.[1] Before 1961, California courts stated actions to rescind based on sections 1689–1691 were actions at law, and actions under 3406–3408 were based in equity.[2] *Paularena v. Superi-*

---

1. Sections 9–09–02 to 9–09–04 and 32–04–21 to 32–04–23, N.D.C.C., are stated in the Century Code as being derived from Cal. Civil Code §§ 1689–1691, 3406–3408. All of these statutes derive from Field's Civil Code, which North Dakota first adopted in 1865. California then adopted an amended version of Field's Civil Code in 1873, and Dakota Territory in 1877 subsequently re-enacted the entire Civil Code presumably based on the 1873 amendments. Laws of Dakota Territory, preface (1877). While the technical derivation may in fact be the Civil Code of 1877, it is clear N.D.C.C. §§ 9–09–02 to 9–09–04 and 32–04–21 to 32–04–23 remain largely unchanged since their original enactment in 1865. *See Furlong Ent. v. Sun Exploration & Prod.*, 423 N.W.2d 130, 134–36 (N.D.1988).

2. In 1961, the California Legislature amended the California Civil Code. Daniel Jay Isenburg, *Statutory Changes in the Law of Rescission in California*, 19 Hastings L.J. 1248, 1249 (1968). Sections 3406 to 3408, dealing with rescission in equity, were repealed, and § 1689 was amended adding two subsections previously only available under § 3406. *Id.* The legislature also amended § 1691 to allow service of pleadings to substitute for notice and offer of restoration, and added language allowing the courts to grant any relief appropriate under the circumstances. *Id.*

*or Court,* 231 Cal.App.2d 906, 42 Cal.Rptr. 366, 370 (1965); *see also Philpott v. Superior Court,* 1 Cal.2d 512, 36 P.2d 635, 641 (1934); *McCall v. Superior Court,* 1 Cal.2d 527, 36 P.2d 642, 646–47 (1934).

[¶ 20] Our previous cases and other jurisdictions' applications of the same statutory scheme clearly indicate N.D.C.C. §§ 9–09–02 to 9–09–04 were intended to permit a rescission at law, while N.D.C.C. §§ 32–04–21 to 32–04–23 were intended to provide a suit in equity for rescission.

[¶ 21] In this case, Barker, in her complaint, asked the court to cancel the sale of the home and return the ownership of the house to Ness and Smith. There is nothing in the record indicating tender of a notice of rescission and offer to restore sufficient under N.D.C.C. § 9–09–04 to effect a rescission at law. Therefore, we determine Barker proceeded in equity, seeking a rescission of the sale of the house. Because Barker was pursuing a claim in equity, with other alleged damage claims incidental to and dependant on the claim for rescission, we necessarily hold the district court did not err when it refused to grant Barker a jury trial. *See Rub,* 481 N.W.2d at 458 (holding there is no absolute right to a jury trial in an equitable proceeding).

### III

[¶ 22] Barker argues the district court erred when it reduced her restitution by the value of the rental income she had received while owning the house. The district court under N.D.C.C. § 9–09–04(2) found Barker had received rental income while in possession of the home and that those benefits must be restored to Smith and Ness.

[¶ 23] We have stated the restoration of the status quo as a requirement for rescission at law under N.D.C.C. § 9–09–04 stems from the underlying essentially equitable nature of the action. *Holcomb v. Zinke,* 365 N.W.2d 507, 510 (N.D.1985). Any offer to restore under this principle should include an offer to remit any rent collected or the reasonable value of use during the period of possession. *Id.*

[¶ 24] While N.D.C.C. § 9–09–04 involves an action for rescission at law, these principles are really equitable in nature, and consequently apply equally to a claim in equity for rescission. N.D.C.C. § 32–04–23. Therefore, when fashioning the decree, the district court properly considered the equitable principles underlying N.D.C.C. § 9–09–04 in requiring Barker to return the rental income she had received.

[¶ 25] However, equity envisions a restoration of both parties to their pre-contractual positions. *Folkers v. Southwest Leasing,* 431 N.W.2d 177, 183 (Iowa Ct.App. 1988) (stating equitable relief should be granted in a fashion which restores each party to their former rights, and places each of them, so far as is equitable and reasonable, in the situation each occupied before the contract was entered into). In a rescission based on fraud the equities and particular facts will weigh heavily, but generally the defendant would be required to return specific property if it is still in the defendant's hands; or return the fair market value of property no longer in the defendant's hands at the time of judgment; or return any gain made on the resale of property transferred to the defendant by the plaintiff; or return the value of any money, services or intangibles transferred to the defendant by the plaintiff. Dobbs, *supra* § 9.3(4), at 709–10. The defendant would also have to return any benefit derived from the use of what was transferred to the defendant by the plaintiff, measured as may be appropriate by rental value, rents received, market interest rates, or any interest actually received. *Id.* at 710.

[¶ 26] Minnesota follows a similar approach when rescinding a contract. Minnesota requires the buyers to remit the fair rental value and requires the sellers to remit the interest on the amount paid the sellers from the time of payment. *See Brink v. Larson,* 411 N.W.2d 585, 588 (Minn.Ct.App.1987) (citing *Viebahn v. Gudim,* 273 Minn. 504, 142 N.W.2d 80, 84 (Minn.1966); *Dohs v. Kerfoot,* 183 Minn. 379, 236 N.W. 620, 621 (1931)). It is important these rules are applied in such a fashion that the status quo is returned to both parties so far as is equitable and reasonably possible. *Folkers,* 431 N.W.2d at 183.

[¶ 27] This symmetrical application requires both parties be returned to their pre-contractual position. In addition to Barker remitting the reasonable use value gained from the transaction, in the absence of some countervailing equitable factor, Ness and Smith must also remit to Barker the value of the use of the money paid them for the purchase of the house. That value is often measured for equitable purposes by reference to market interest rates. *See* Dobbs, *supra* § 9.3(4), at 710.

## IV

[¶ 28] We affirm the district court's denial of a jury trial and its order for rescission, and remand the case to the district court for a redetermination of restitution owed to Barker consistent with this opinion.

[¶ 29] VANDE WALLE, C.J., MARING and SANDSTROM, JJ., concur.

[¶ 30] The Honorable CAROL RONNING KAPSNER was not a member of the Court when this case was heard and did not participate in this decision.

