CITIZENS STATE BANK, ENDERLIN,
North Dakota, Plaintiff and
Appellee,

v.

Mary Ellen SCHLAGEL, Defendant
and Appellant.

Civ. No. 910081.

Supreme Court of North Dakota.

Dec. 9, 1991.

Ohnstad Twichell, West Fargo, for plaintiff and appellee; argued by Steven E. McCullough.

Monty Grant Mertz (argued), Fargo, for defendant and appellant.

MESCHKE, Justice.

Mary Ellen Schlagel appealed a judgment granting Citizens State Bank foreclosure of a mortgage and dismissing Schlagel's counterclaim. Because we conclude that the trial court applied correct legal standards and fairly determined that the Bank did not commit fraud, we affirm.

In October 1985, Mary Ellen Schlagel, her son, and his wife purchased a hardware business in Lisbon from Robert and Borghild Bohlken, their son, Gary, and his wife, Linda. The purchase included inventory and some fixtures, but not the building in which the business was located. At the suggestion of Charles Feeney, the Bank's president, Schlagel consulted Wayne Jones, a Lisbon attorney, who assisted Schlagel in completing and documenting the purchase. To finance the purchase, Schlagel borrowed $92,000 from the Bank. Schlagel gave the Bank a mortgage on her farmland to secure payment of the $92,000 note.

Upon default, the Bank sued Schlagel to foreclose the mortgage securing the $92,000 note. Schlagel answered, alleging estoppel, failure of consideration, and that the note and mortgage were unenforceable because "the [Bank] ... fraudulently induced Mary Ellen Schlagel to give [the Bank] the note and mortgage ... through fraud, deception, and self-dealing in that the primary purpose of the transaction was to improve [the Bank's] position by converting the unsecured debt of the Bohlken's to fully secured debt against Mary Ellen Schlagel's land." Schlagel also counterclaimed, alleging that the Bank "fraudulently and deceptively advised Mary Ellen Schlagel that the Bohlken's hardware store was a good investment when he knew or should have know[n] their financial obligations ... were in default, or in danger of default" and that the Bank effectively converted unsecured debt into secured debt.

After a trial without a jury, the trial court determined:

### XIII.

... the Court cannot find that [Schlagel], by her evidence, has raised a reasonable inference that fraud and self-dealing existed.

### XIV.

... [Schlagel] and her son testified that they were recommended to Mr. Wayne Jones by Mr. Charles Feeney and that they looked to Mr. Wayne Jones to get the necessary financial information to assist them in determining whether or not the purchase should be made.

\* \* \* \* \* \*

## XVI.

While it may be nice for Mr. Feeney to have provided Mary Ellen Schlagel with financial information relative to the success of the business, when Mary Ellen Schlagel sought out that information from another source and employed someone to do that for her, she must rely on that person for that information and to assist her to make the appropriate business decision.

## XVII.

It is not entirely clear that the secured position of the Bank with respect to the Bohlkens and the Schlagels improved to that great an extent. With the Bohlkens, [the Bank] had an inventory lien, a real estate mortgage and personal guaranties by the Bohlken parents for their son and daughter-in-law. Although it is not entirely clear what the value of the security was in this situation, the personal guaranties of the Bohlkens' loan certainly were, from a general observation, not an undersecured situation. The [Bank] then went from the position of being secured in the above-described manner with the Bohlkens to the situation in this case where the above-described real property of [Schlagel], approximately 400 acres, was used as security for the inventory. There were no personal guaranties nor inventory liens. It is very difficult to jump to the conclusion that this position was that much better than the position which the Bank held with the Bohlkens. This is apparently the evidence that [Schlagel], at least in part, wishes the Court to use to make the conclusion that there was some type of self-dealing and the going from a very undersecured position to an oversecured position. The evidence simply does not support [Schlagel's] conclusion.

## XVIII.

[Schlagel] has failed to show to the satisfaction of this Court by clear and convincing evidence that there is any fraud in this case.

The trial court ordered foreclosure of the mortgage and dismissal of Schlagel's counterclaim. Schlagel appealed.

Schlagel contends: (1) that the trial court's finding that she failed to prove fraud by clear and convincing evidence is clearly erroneous; (2) that the trial court applied erroneous legal standards; and (3) that she is entitled to damages. We reject each contention.

Schlagel first argues that the trial court's findings of fact are not adequate to sustain its judgment and that the trial court's finding that she failed to prove fraud by clear and convincing evidence is clearly erroneous. Schlagel argues, in part, that the trial court decided that, because Feeney referred Schlagel to Jones, Feeney was exonerated of all duties to her and that there was no basis for that finding. The trial court did not hold, as Schlagel asserts, that Feeney exonerated himself of all duties to Schlagel by merely referring her to Jones. Schlagel also argues, without any supportive reasoning, that the trial court did not "address the clear conflict of interest between the bank and the Schlagels, with Mr. Jones' prior and on-going attorney-client relationship" with the Bank. Schlagel does not show us how that claimed conflict of interest, if one existed, is relevant in this case.

■ A trial court's findings of fact must enable us to understand its reasoning. *Koller v. Koller*, 377 N.W.2d 130 (N.D.1985). A finding of fact "is 'clearly erroneous' only when, although there is some evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made." *In re Estate of Elmer*, 210 N.W.2d 815, 820 (N.D.1973). Merely because we might have viewed the facts differently, if we had tried the case, does not entitle us to reverse the trial court's decision. *Id.* A choice between two permissible views of the weight of the evidence is not clearly erroneous. *Id.* The trial court's findings in this case enable us to understand its reasoning and decision.

■ Schlagel contends that Feeney lied when he said there were no profit and loss

statements from the Bohlkens because there were no inventory loans. Though Schlagel and Feeney seem to have different understandings of what an inventory loan is, we are not persuaded, anymore than the trial court was, that Feeney lied. Schlagel assumes that an inventory loan is any loan used to purchase inventory. Feeney, on the other hand, testified that an inventory loan "is basically secured by the inventory of the business and very little outside security, but one that requires supervision by the bank and constant monitoring." Feeney testified that the Bank loaned money to Gary Bohlken in 1984 to purchase part of the inventory from his parents, that inventory was used as partial security for that loan, but that the Bank also had a personal guarantee of Robert Bohlken and his wife, as well as a second mortgage on the building in which the business was located. Feeney also testified that he "probably asked [Gary Bohlken] for a new financial statement and operating statement sometime in '85", but never received one. We are not persuaded that the contrasting testimony by Schlagel and Feeney about profit and loss statements and inventory loans makes clearly erroneous the trial court's finding that Schlagel failed to prove fraud by clear and convincing evidence.

■ The trial court found that the Bank had proved Schlagel's note and mortgage, that Schlagel defaulted, that Schlagel had not proved a reasonable inference of fraud and self-dealing by the Bank, that Schlagel relied on Attorney Jones for financial information to assist her in determining whether to purchase the business, that the evidence did not show that the Bank improved its security position by self-dealing, and that Schlagel "failed to show to the satisfaction of this Court by clear and convincing evidence that there is any fraud in this case." From our review of the evidence, we conclude that these findings are not clearly erroneous. These findings support the foreclosure of the mortgage and the dismissal of Schlagel's counterclaim.

■ Schlagel argues that the trial court incorrectly applied the standards for the tort of deceit under NDCC 9–10–02 and 9–10–03. Under *Hellman v. Thiele*, 413 N.W.2d 321 (N.D.1987), those sections apply in cases when there is no contract between the parties, rather than NDCC 9–03–08 [1] and 9–03–09 [2] that apply in a case like this, when there is a contract between the parties. Schlagel argues:

> The evidence in the record established by clear and convincing evidence that Citizens State Bank, through Mr. Feeney, either committed actual fraud by suppressing knowledge, Section 9–03–08(3) or constructive fraud, when by breaching his duty to Mary Schlagel, without actually fraudulent intent, he gained an advantage for the Bank by misleading her to her prejudice.... Mr. Feeney had a clear duty to disclose the information in his files to Mary Schlagel, and his failure to do so constituted fraud.

This record does not support the argument. "The statutory definitions of actual fraud and deceit are similar." *Olson v. Fraase*, 421 N.W.2d 820, 827 n. 3 (N.D.1988). If the trial court found no

---

1. NDCC 9–03–08 says:

*Actual fraud defined.* Actual fraud within the meaning of this title consists in any of the following acts committed by a party to the contract, or with his connivance, with intent to deceive another party thereto or to induce him to enter into the contract:

1. The suggestion as a fact of that which is not true by one who does not believe it to be true;

2. The positive assertion, in a manner not warranted by the information of the person making it, of that which is not true though he believes it to be true;

3. The suppression of that which is true by one having knowledge or belief of the fact;

4. A promise made without any intention of performing it; or

5. Any other act fitted to deceive.

2. NDCC 9–03–09 says:

*Constructive fraud defined.* Constructive fraud consists:

1. In any breach of duty which, without an actually fraudulent intent, gains an advantage to the person in fault or anyone claiming under him, by misleading another to his prejudice or to the prejudice of anyone claiming under him; or

2. In any such act or omission as the law specially declares to be fraudulent without respect to actual fraud.

evidence of suppression of information by the Bank, it does not matter whether the court applied the actual-fraud statute or the deceit statute. Furthermore, we have found no indication that the trial court did not apply NDCC 9–03–08. For constructive fraud under NDCC 9–03–09, the trial court found that the Bank did not gain an undue advantage. The trial court found that "[i]t is very difficult to jump to the conclusion that [the Bank's security position on the loan to Schlagel] was that much better than the position which the Bank held with the Bohlkens." The court found that "[t]he evidence simply does not support" Schlagel's assertion that self-dealing by the bank brought it "from a very undersecured position to an oversecured position." In our view of the record, the trial court considered the proper factors under NDCC 9–03–08 and 9–03–09, and its findings with regard to actual and constructive fraud are not clearly erroneous.

Relying on *First National Bank v. Brown*, 181 N.W.2d 178 (Iowa 1970), and *Richfield Bank & Trust Co. v. Sjogren*, 309 Minn. 362, 244 N.W.2d 648 (1976), Schlagel contends that the Bank breached a duty to disclose to her negative financial information that the Bank knew about the Bohlken Hardware business.

■ Ordinarily, a bank has no affirmative duty to disclose a customer's financial condition. *First Nat'l Bank & Trust Co. v. Brakken*, 468 N.W.2d 633 (N.D.1991); *Ostlund Chemical Co. v. Norwest Bank*, 417 N.W.2d 833 (N.D.1988); *Hellman v. Thiele*. A bank may not disclose customer information, except by valid legal process or by the customer's written and signed consent. NDCC 6–08.1–03 and 6–08.1–04. If a bank responds to an inquiry about a customer's credit status, it has "a duty to impart full, accurate, and truthful information." *Ostlund*, 417 N.W.2d at 836. Although a duty of disclosure exists if there is a fiduciary relationship (*Brakken*), Schlagel did not prove that there was a fiduciary relationship between her and the Bank.

■ Schlagel contends that the Bank knew detrimental financial information about the Bohlken business that it had a duty to disclose to her before loaning her funds to buy the Bohlken Hardware business. Schlagel testified that Feeney "didn't say it wasn't profitable," did nothing to "discourage [her] from getting involved" and made no "effort to disclose his file that he had on the Bohlkens." She testified that she did not know the extent of the Bohlkens' indebtedness to the Bank; that after the purchase, she learned that the Bohlkens "owed a lot of money to United Hardware" and that she believed Feeney knew about this indebtedness. Schlagel further testified that Feeney "had [Bohlkens'] files and could look back and check to see if they owed any money and what their current status was. And I thought that he could just tell me yes or no whether it was good or bad." She also testified that the Bank "had some knowledge of a precarious financial position of the Bohlkens which ... it should have passed on to" her, that she believes that Feeney knew that the Bohlkens "were having a hard time meeting their payments to United Hardware", and that Feeney should have told her so.

Feeney testified that the statements he had received from the Bohlkens "indicated that the business was profitable.... They were not getting rich but they were cash-flowing"; that he "didn't perceive any real [financial] problem"; that the Bohlkens' loans were "paid off" and "there were no payment problems"; and that he had no "information concerning the status of the Bohlkens' account with United Hardware, their supplier." The trial court evidently believed Feeney.

Schlagel's reliance on the Minnesota decision in *Sjogren* is misplaced. In that case, in affirming a trial court's finding of fraud by a bank, the court found a narrow exception to the general rule that a bank has no duty to disclose a customer's financial condition. The court found that the bank knew of a customer's irretrievable insolvency and held that, because "the bank had *actual knowledge* of the fraudulent activities of one of its depositors, it had an affirmative duty to disclosure [sic] those facts to the respondents before it engaged

in making the loan to respondents which furthered the fraud." *Sjogren,* 244 N.W.2d at 652. *Sjogren* held that if such a disclosure to a potential borrower would breach a duty not to disclose an existing customer's confidential information, "the bank should simply refuse to make the loan." *Id.* Schlagel has not shown that the Bank knew that the Bohlkens were irretrievably insolvent, amounting to actual knowledge of fraudulent activity by Bohlkens.

Schlagel's reliance on the Iowa decision in *First Nat'l Bank v. Brown* is also misplaced. In that case, the bank loaned money to a borrower who the loan officer knew or should have known trusted him implicitly, and the loan officer "had far more familiarity with the operative facts ... than did" the borrower. 181 N.W.2d at 182. The court found a narrow exception to the general rule that a bank has no duty to disclose a customer's financial condition when the lender knew the proceeds of the loan would be used to purchase property subject to a substantial encumbrance held by the lender that the lender "designedly failed to reveal", and the lender "at all times secretly intended to ameliorate its unfavorable financial position attendant upon prior improvident encumbrance dealings with [its existing customer] by effecting the loan to defendants." 181 N.W.2d at 184. In this case, we have upheld the trial court's finding that the evidence did not support Schlagel's assertion that self-dealing by the Bank improved an undersecured position to an oversecured position. Schlagel, unlike the borrower in *Brown,* did not prove that the Bank "secretly intended to ameliorate its unfavorable financial position ... by effecting the loan to" Schlagel. 181 N.W.2d at 184. *Brown,* which also affirmed a finding of fraud by the trial court, does not compel a finding of fraud as a matter of law here.

■ There was no evidence that there was any valid legal obligation of the Bank to disclose information in its files about any of the Bohlkens. There was no evidence that the Bank had the Bohlkens' signed written consent to disclose financial information about them to Schlagel. There was no fiduciary relationship. *See Brakken,* 468 N.W.2d 633. The evidence does not bring this case within the narrow exceptions used in *Richfield Bank & Trust Co. v. Sjogren* or *First Nat'l Bank v. Brown.* We conclude that the Bank did not breach a duty to disclose information about the Bohlkens to Schlagel. In this case, the Bank had no duty to disclose any information about the Bohlkens' financial condition.

Schlagel contends that she is entitled to an award of damages. We have determined that the trial court's findings of fact are not clearly erroneous, that the findings support the judgment of foreclosure of the mortgage and dismissal of Schlagel's counterclaim, and that the Bank did not breach a duty to disclose information about the Bohlkens' financial condition. Schlagel, therefore, is not entitled to damages.

■ As part of her argument that she is entitled to damages, Schlagel contends that there was no consideration for the loan transaction with the Bank:

> Because of the funds the bank had loaned to the Bohlkens just one year prior to the purchase by the Schlagels, and the outstanding debt, Mr. Feeney merely converted the Bohlkens debt to the Schlagel's debt, and used the loan proceeds to retire debt owed to his own bank. There was no new consideration. *See* N.D.Cent.Code Sections 9–05–01 and 1–01–20.

The argument is without merit. The Bank parted with $92,000, which Schlagel received, spent, and only partially repaid. Consideration existed.

We affirm the judgment.

ERICKSTAD, C.J., and VANDE WALLE and LEVINE, JJ., concur.

Justice H.F. GIERKE III, a member of the Court when this case was heard, resigned effective November 20, 1991, to accept appointment to the United States

Court of Military Appeals and did not participate in this decision.