2010 ND 251

**AMERICAN BANK CENTER, Plaintiff and Appellant**

v.

**David L. WIEST, Defendant, Third Party Plaintiff and Appellee**

v.

**Howard Palmer, Third Party Defendant and Appellee**

and

**Louis Burckhardsmeier, Third Party Defendant.**

**No. 20100027.**

Supreme Court of North Dakota.

Dec. 23, 2010.

Richard P. Olson (argued) and Wanda L. Fischer (on brief), Minot, N.D., for plaintiff and appellant.

Joseph A. Turman (argued) and Katrina A. Turman Lang (on brief), Fargo, N.D., for defendant, third party plaintiff and appellee.

David J. Hogue (appeared), Minot, N.D., for third party defendant and appellee.

CROTHERS, Justice.

[¶ 1] American Bank Center ("Bank") appeals from a district court judgment rescinding a $250,000 loan the Bank made to David L. Wiest and requiring Wiest to repay part of a $200,000 loan the Bank made to Wiest for a line of credit. The Bank argues the district court erred in rescinding the $250,000 loan because the court improperly imputed the fraud of the Bank's loan officer, Howard Palmer, to the Bank. The Bank also argues the court erred in finding Palmer had a fiduciary relationship with Wiest and in not ordering repayment of the entire $200,000 loan. We conclude the district court did not clearly err in imputing Palmer's fraud to the Bank, did not abuse its discretion in granting Wiest equitable rescission of the $250,000 loan, and did not clearly err in finding Palmer had a fiduciary relationship with Wiest and in ordering only partial repayment of the $200,000 loan. We affirm.

I

[¶ 2] At all relevant times, the Bank operated as two separate banks. Bank Center First, with its principal office in Bismarck, and American State Bank and Trust, with its principal office in Dickinson and a branch office in Minot. Palmer was employed by the Bank as a commercial loan officer and vice president, originally working at the Bank's Bismarck location and subsequently working in Minot. Louis Burckhardsmeier owned Burckhardsmeier Financial Solutions and had worked as a car and truck salesman. He had operated as a venture capitalist and financial consultant since 1998 and had a number of customers affiliated with the trucking business. Wiest is an orthopedic surgeon and had known Burckhardsmeier for approximately fifteen years.

[¶ 3] In this case, the Bank seeks to collect on a $250,000 loan and a $200,000 loan made through Palmer to Wiest in connection with interrelated businesses involving Wiest and other business associates, including Glass Blast Media, Inc. According to Wiest, Burckhardsmeier fa-

cilitated Wiest and his business associates in procuring the loans through Palmer at the Bank. The issues in this lawsuit involve the business relationships of Wiest, Burckhardsmeier, Palmer, and the Bank. After Wiest defaulted on the two loans, the Bank sued him to collect on the loans. Wiest answered, seeking dismissal of the Bank's complaint and alleging he was fraudulently induced to enter into the $250,000 loan by statements and actions by Palmer and Burckhardsmeier. Wiest also brought a third-party complaint against Palmer and Burckhardsmeier, alleging deceit and seeking damages to the extent the Bank recovered from him. Wiest alleged Palmer and Burckhardsmeier induced him to enter into the loan transactions with the Bank by suggesting and asserting untrue facts, suppressing facts they were bound to disclose and making promises without any intention of performing.

[¶ 4] After a bench trial, the district court made extensive findings, recognizing Burckhardsmeier had an established business relationship with Palmer. The court found that Burckhardsmeier had arranged over $12 million of loans through Palmer for various Burckhardsmeier-associated entities. The court found Burckhardsmeier, with Palmer's assistance, was a promoter, under a scheme for raising funds, where Burckhardsmeier arranged for investors in his various business enterprises to pay obligations made to prior investors. The court found that Burckhardsmeier enticed banks to make loans to him or the various companies he represented and that repayment of the "invested" sums required Burckhardsmeier to find other investors or financing to cover the debts. The entire enterprise collapsed when no additional "investors" could be found. Under the "scheme," Burckhardsmeier pledged trucks and trailers as collateral that either were not owned by the entity pledging them or had already been pledged as collateral on other obligations.

[¶ 5] The court found that in August 2005, Burckhardsmeier needed additional capital to keep various business entities afloat and loans at the Bank current. Both Burckhardsmeier and Palmer met with Wiest to discuss a short-term loan for $250,000, proposing that Wiest would borrow $250,000 from the Bank and that the loan proceeds would go to Glass Blast to purchase trucks and equipment, which Burckhardsmeier represented were vital to its continued operation.

[¶ 6] In November 2005, Wiest executed a note with the Bank for a $250,000 loan. Although Wiest did not execute a written authorization for disbursement of the $250,000 in proceeds, he orally authorized deposit of the funds in Glass Blast's account to purchase trucks and trailers which Burckhardsmeier and Palmer represented would be his collateral for the loan. The next day Palmer drove to Bismarck to deposit the loan proceeds in Glass Blast's checking account. However, the loan proceeds were used to cover overdrafts in Glass Blast's checking account and were not used to purchase trucks and equipment. The court found that Burckhardsmeier and Palmer were "scrambling to raise additional capital" to continue to service the large debt of Burckhardsmeier's other related companies at the Bank and that both Palmer and Burckhardsmeier knew the proceeds would not be used to purchase trucks and equipment. The court found Wiest's specific instructions were that the proceeds were for Glass Blast's purchase of vehicles as collateral for the loan. The court also found that Palmer never informed Wiest that Palmer had not obtained the titles from Burckhardsmeier on the $250,000 loan, and that neither Palmer nor Burckhardsmeier in-

formed Wiest and his business associates of all of Glass Blast's loans.

[¶ 7] The district court found Palmer also fabricated a story about Wiest's involvement in a large trucking enterprise to the Bank's loan committee for the $250,000 loan. The court found Palmer's presentation to the Bank loan committee was "devoid of almost any truthful statement." The court found that Palmer continued to tell Wiest that he was working on a loan application to refinance Glass Blast's debt and that Wiest did not know the actual extent of Glass Blast's indebtedness. Palmer represented it was critical there be no "red flags" that could endanger SBA financing, so it was important that all of Glass Blast's obligations be current. In March 2006, Palmer convinced Wiest to authorize use of funds on his separate $200,000 line of credit at the Bank to cover Glass Blast's overdrafts, as well as to make payments on loans for Burckhardsmeier's related entities. In May 2006, Palmer again had Wiest authorize advances, which the court found were for payments on various loans at the Bank for Burckhardsmeier's related entities.

[¶ 8] In July 2006, Palmer resigned his position at the Bank, and subsequent audits revealed most of Palmer's loans were not properly secured. The court found that the Bank ended up charging off most of Palmer's loans and that those loans were affiliated with Burckhardsmeier or companies he purported to represent. The court granted the Bank judgment for $76,678.65 against Wiest, representing part of the $200,000 loan for a line of credit, and completely denied collection on the $250,000 loan.

## II

[¶ 9] The Bank argues the district court erred in rescinding the $250,000 loan contract because the court improperly imputed Palmer's fraud to the Bank. The Bank also argues the court erred in finding Palmer had a fiduciary relationship with Wiest and in denying the Bank recovery of the entire $200,000 loan.

## A

[¶ 10] Under North Dakota law, a valid contract requires parties capable of contracting, consent, a lawful object, and sufficient consideration. N.D.C.C. § 9–01–02; *see Erickson v. Erickson*, 2010 ND 86, ¶ 7, 782 N.W.2d 346. Section 9–03–01, N.D.C.C., requires the parties' consent to be free, mutual, and communicated by each to the other. *Erickson*, at ¶ 7. "A party's apparent consent is not free when it is obtained through fraud, and fraud can be either actual or constructive." *Id.* In *Erickson*, we explained the application of actual or constructive fraud necessary to invalidate a contract:

"Persons alleging actual or constructive fraud seek to invalidate contracts by arguing consent was not freely obtained. *See* N.D.C.C. § 9–03–01(1) (parties' consent to a contract must be free); § 9–03–03(3) (consent is not free when obtained through fraud); § 9–03–07 ('Fraud is either actual or constructive.'). The most significant difference between the two claims is that actual fraud requires proof of an intent to deceive, while constructive fraud requires no proof of such intent. N.D.C.C. §§ 9–03–08 and 9–03–09(1). Although actual and constructive fraud both invalidate a party's apparently free consent to a contract, the two types of fraud differ in the source of injury they address. Actual fraud confronts situations where one party intentionally misrepresents or conceals facts from another contracting party. N.D.C.C. § 9–03–08. Constructive fraud confronts situations where the source of the claimant's injury is the

breach of an existing duty between the contracting parties. N.D.C.C. § 9–03–09(1)."

2010 ND 86, ¶ 8, 782 N.W.2d 346.

[¶ 11] Section 9–03–08, N.D.C.C., defines actual fraud:

"Actual fraud . . . consists in any of the following acts committed by a party to the contract, or with the party's connivance, with intent to deceive another party thereto or to induce the other party to enter into the contract:

1. The suggestion as a fact of that which is not true by one who does not believe it to be true;

2. The positive assertion, in a manner not warranted by the information of the person making it, of that which is not true though that person believes it to be true;

3. The suppression of that which is true by one having knowledge or belief of the fact;

4. A promise made without any intention of performing it; or

5. Any other act fitted to deceive."

[¶ 12] Fraud must be proven by clear and convincing evidence, and the party asserting fraud has the burden of establishing the elements of fraud. *See Citizens State Bank–Midwest v. Symington,* 2010 ND 56, ¶ 21, 780 N.W.2d 676; *Erickson v. Brown,* 2008 ND 57, ¶ 26, 747 N.W.2d 34; *First Union Nat'l Bank v. RPB 2, LLC,* 2004 ND 29, ¶ 22, 674 N.W.2d 1. "[B]ecause intent to defraud and deceive is ordinarily not susceptible of direct proof, fraud . . . may be inferred from the circumstances" at the time of the transaction. *Dewey v. Lutz,* 462 N.W.2d 435, 441 (N.D.1990).

[¶ 13] A finding of fraud is a question of fact which we will not set aside on appeal unless clearly erroneous. *See WFND, LLC v. Fargo Marc, LLC,* 2007

ND 67, ¶ 25, 730 N.W.2d 841; *Sargent County Bank v. Wentworth,* 500 N.W.2d 862, 874 (N.D.1993). "A finding of fact is clearly erroneous when there is no evidence to support it, or when, although there is some evidence to support it, the reviewing court, on the entire evidence, is left with a definite and firm conviction that a mistake has been made." *Wentworth,* at 874. "Questions of law, however, are fully reviewable on appeal." *Romanyshyn v. Fredericks,* 1999 ND 128, ¶ 5, 597 N.W.2d 420.

## B

[¶ 14] The Bank does not dispute the existence of fraud in the loan transactions with Wiest, conceding Palmer was reckless and a "rogue lender" throughout the transactions. The Bank instead asserts that Palmer was defrauding the Bank and that Burckhardsmeier had a far more significant role than Palmer in misleading Wiest. The Bank argues the district court erred in imputing Palmer's fraud to the Bank and in granting Wiest rescission.

[¶ 15] Under N.D.C.C. § 3–03–01, an agent represents a principal "for all purposes within the scope of the agent's actual or ostensible authority, and all the rights and liabilities which would accrue to the agent from the transactions within such limit, if they had been entered into on the agent's own account, accrue to the principal." Nonetheless, "[a]n agent never can have authority, either actual or ostensible, to do an act which is, *and is known or suspected by the person with whom the agent deals to be,* a fraud upon the principal." N.D.C.C. § 3–02–07 (emphasis added). "Generally, the knowledge of the board of directors, officers, or agents of a corporation is imputed to the corporation." *Employers Reinsurance Corp. v. Landmark,* 547 N.W.2d 527, 535 (N.D.1996).

**[¶ 16]** Under agency law, fraud and deceit may be imputed from an agent to the principal. *See Dewey*, 462 N.W.2d at 443; *see also* N.D.C.C. §§ 3–03–01, 3–02–07. This Court has previously discussed when a bank may be charged with its agent's knowledge:

> " 'A banking corporation is liable to innocent third persons where the representation is made in the course of its business and by an agent while acting within the general scope of his authority, *even though, in the particular case, he is secretly abusing his authority and attempting to perpetrate a fraud upon his principal,* or some other person, for his own ultimate benefit. In such a case, the bank is chargeable with the knowledge of its agents, and the exception to the rule of imputed knowledge does not apply.' "

*Dewey*, 462 N.W.2d at 443 (quoting *McIntosh v. Dakota Trust Co.*, 52 N.D. 752, 753–54, 204 N.W. 818, 819 Syllabus 6 (1925)) (emphasis added).

**[¶ 17]** The Bank argues Palmer was acting adversely to the Bank's interests and it was unaware the loan proceeds were not being properly disbursed. The Bank contends it was unaware until sometime in July 2006 that Palmer was "drastically deviating" from Bank policy regarding Wiest's loan. The Bank also contends it had no reason to review Wiest's file because Wiest did not stop making payments on his loan until after a May 2006 payment. The Bank further claims it was prevented from noticing "any major irregularities with any loan in Palmer's portfolio" because Wiest had made payments on unrelated loans to prevent "red flags" from jeopardizing Glass Blast's attempts to refinance an SBA loan. The Bank claims Wiest bears the responsibility for "actively" working for his own benefit "to hide from the Bank the true state of Palmer's portfolio." By these arguments, the Bank presumes Wiest was in a better position than the Bank regarding knowledge of Palmer's entire portfolio at the Bank. The district court's findings, however, indicate otherwise.

**[¶ 18]** The district court rejected the Bank's argument Palmer's fraud could not be imputed to the Bank. The court made specific findings that, at the time of the transactions, Palmer was employed by the Bank as a commercial loan officer and vice president. The court found Palmer's conduct relating to the transactions was within the scope of his employment and the misrepresentations Palmer made to the Bank's loan committee, though potentially evidence of a fraudulent scheme, did not negate whether Palmer's fraud on Wiest could be imputed. The district court also found any subsequent violation of Palmer's duty to the Bank for full and accurate disclosure did not affect the underlying fraud that induced Wiest to enter into the agreement and, further, any fraud in Palmer's representation to the loan committee is separate and distinct from the fraud committed on Wiest. Simply put, the court found Palmer was acting as an agent of the Bank when Palmer met with Wiest to convince him to enter into the loans. The court did not find, as the Bank suggests it should have, that Wiest was aware Palmer was abusing his authority or committing a fraud on the Bank. The court instead concluded Palmer's fraud was properly imputed to the Bank because of the agency relationship. Evidence in this record supports those findings, and we are not left with a definite and firm conviction the court made a mistake in imputing Palmer's fraud to the Bank.

**[¶ 19]** The Bank nevertheless urges this Court to apply an "adverse interest exception" to the rule for imputation of an agent's fraud to the principal. *See Aetna*

*Indem. Co. v. Schroeder,* 12 N.D. 110, 110, 95 N.W. 436, 436 Syllabus 2 (1903) (agent's knowledge not imputable "when the agent is a nominal agent merely, or acting as to ministerial matters merely, nor when the agent has knowledge of facts in relation to the matter in which he is acting when his interests, or the interests of another for whom he is acting, are adverse to those of the principal"); *see also Askanase v. Fatjo,* 130 F.3d 657, 666 (5th Cir.1997) (exception to imputation where "officer/director as acting adversely to the corporation and entirely for his own or another's purpose"); *F.D.I.C. v. Ernst & Young,* 967 F.2d 166, 170–71 (5th Cir.1992); *Grove v. Sutliffe,* 916 S.W.2d 825, 830 (Mo.Ct.App. 1995).

[¶ 20] We acknowledge an "adverse interest exception" to the general rule of imputation has some basis in our case law. *See First Nat. Bank of Nome v. German American Ins. Co.,* 23 N.D. 139, 139, 134 N.W. 873, 874 Syllabus 3 (1911) ("Where an agent's duty to his principal is opposed to or conflicts with his own interest or that of another person for whom he acts, the law will not impute his knowledge gained in such transaction to such principal."); *Aetna Indem. Co.,* 12 N.D. at 110, 95 N.W. at 436 Syllabus 2. The current view regarding the "adverse interest exception" is aptly set forth in the Restatement (Third) of Agency § 5.04 (2006) (emphasis added):

> "For purposes of determining a principal's legal relations with a third party, notice of a fact that an agent knows or has reason to know is not imputed to the principal if the agent acts adversely to the principal in a transaction or matter, *intending to act solely for the agent's own purposes or those of another person.* Nevertheless, notice is imputed
>
> (a) when necessary to protect the rights of a third party who dealt with the principal in good faith; or
>
> (b) when the principal has ratified or knowingly retained a benefit from the agent's action.
>
> A third party who deals with a principal through an agent, knowing or having reason to know that the agent acts adversely to the principal, does not deal in good faith for this purpose."

We believe our statutes and this Court's decision in *Dewey* are in harmony with the Restatement view.

[¶ 21] Here, the district court found that despite Palmer's apparent misrepresentations to the Bank, he was still acting within the scope of his authority in procuring the notes from Wiest. Under the district court's findings, Palmer's interests in these transactions were not solely for his own interest or in the interest of another. We also observe that it is the Bank attempting to collect on loans admittedly procured by the fraudulent representations of its agent. *Cf. Emerado Farmers' Elevator Co. v. Farmers' Bank of Emerado,* 20 N.D. 270, 280, 127 N.W. 522, 525 (1910) ("principal cannot take the benefit of the transaction conducted by its agent ostensibly on its behalf without assuming full responsibility, not only for his acts, but [also for] his knowledge"); 3 Fletcher Cyc. Corp. § 823 (2010) ("The view has been expressed that the adverse interest exception ... applies only where a third person seeks to enforce some demand against the corporation, but has no application where the corporation seeks to enforce the benefit of a fraud perpetrated by its officer on a third person."). Under the facts and circumstances of this case, we conclude the "adverse interest exception" to the rule of imputation does not apply to the Bank's attempt to collect on loans procured through fraudulent representations by its agent.

[¶ 22] Based on the evidence presented at trial, we are not left with a definite and

firm conviction the district court made a mistake in imputing Palmer's fraud to the Bank. We therefore conclude the district court's findings of fact on this issue are not clearly erroneous and Palmer's fraud was properly imputed to the Bank for the loans at issue.

### C

[¶ 23] The Bank argues the district court erred in granting Wiest equitable rescission of the $250,000 loan.

[¶ 24] Generally, N.D.C.C. §§ 9–09–01 to 9–09–04 permit a unilateral rescission at law, while N.D.C.C. §§ 32–04–21 to 32–04–23 provide for a rescission in equity by adjudication. *See Barker v. Ness*, 1998 ND 223, ¶¶ 14, 20, 587 N.W.2d 183; *see also Murphy v. Murphy*, 1999 ND 118, ¶ 15, 595 N.W.2d 571; *Omlid v. Sweeney*, 484 N.W.2d 486, 489–90 (N.D.1992). Here, the district court granted Wiest equitable rescission of the $250,000 loan under N.D.C.C. § 32–04–21, which provides:

"The rescission of a written contract may be adjudged on the application of the party aggrieved:

1. In any of the cases mentioned in section 9–09–02;

2. When the contract is unlawful for causes not apparent upon its face and when the parties were not equally in fault; or

3. When the public interest will be prejudiced by permitting it to stand."

Equitable actions for rescission under N.D.C.C. § 32–04–21 may be brought "[i]n any of the cases mentioned in section 9–09–02," which includes actions in which consent of a party is obtained by fraud. *See Murphy*, at ¶ 15. Section 9–09–02, N.D.C.C., provides, in part:

"A party to a contract may rescind the same in the following cases only:

1. If the consent of the party rescinding or of any party jointly contracting with the party rescinding was given by mistake or obtained through duress, menace, fraud, or undue influence exercised by or with the connivance of the party as to whom the party rescinding rescinds or of any other party to the contract jointly interested with such party;

2. If through the fault of the party as to whom the party rescinding rescinds the consideration for the party rescinding obligation fails in whole or in part;

3. If such consideration becomes entirely void from any cause;

4. If such consideration before it is rendered to the party rescinding fails in a material respect from any cause; or

5. By consent of all of the other parties."

[¶ 25] "It is a fundamental principle of equity that parties must be restored to their pre-contractual position." *Barker*, 1998 ND 223, ¶ 16, 587 N.W.2d 183. Once a district court grants formal rescission of a contract, the "[court] must restore each side to its respective pre-contractual position." *Id.* Under N.D.C.C. § 32–04–23, "[o]n adjudging the rescission of a contract, the court *may require* the party to whom such relief is granted to make any compensation to the other *which justice may require*." (Emphasis added.) However, this Court has also concluded that where a party seeking to rescind received nothing of value, the "contract sought to be rescinded [was] not one that required restoration in order to do equity." *Volk v. Volk*, 121 N.W.2d 701, 706 (N.D.1963).

[¶ 26] "Because the remedy of rescission is not held in high esteem by

the courts, the power of a court to rescind ... should never be lightly exercised." *Heinsohn v. William Clairmont, Inc.*, 364 N.W.2d 511, 513 (N.D.1985). Rescission of a contract is not a matter of absolute right, but instead is committed to the district court's sound discretion. *Id.;* 12A C.J.S. *Cancellation of Instruments* §§ 10–11 (2004). A district court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner. *Heinsohn*, at 513. The district court "acts in such a manner when its exercise of discretion is not the product of a rational mental process by which the facts of record and law relied upon are stated and are considered together for the purpose of achieving a reasoned and reasonable determination." *In re Estate of Rohrich*, 496 N.W.2d 566, 573 (N.D.1993).

[¶ 27] The Bank argues the district court erred in granting equitable rescission of the $250,000 loan because Wiest benefitted from the loan, received consideration for the loan and had unclean hands. The Bank, however, does not deny the court's findings that Palmer was reckless and a "rogue lender" throughout the transactions, but instead asserts any lack of collateral cannot be blamed solely on Palmer, but also on Burckhardsmeier.

[¶ 28] In this case, the district court made extensive findings regarding Palmer's fraud and imputing that fraud to the Bank. The court found the Bank entered into the loan agreement with full knowledge, through Palmer's dealings, that funds were to be distributed contrary to the representations made to and authorized by Wiest. The court found Wiest was fraudulently induced into signing the note through false and misleading statements by Palmer. The court concluded the Bank could not now look to Wiest for repayment of the loan because Wiest neither received the loan proceeds nor received the promised collateral for the obligation.

[¶ 29] Based on the record and the district court's detailed findings, we conclude the court did not act in an arbitrary, unreasonable, or unconscionable manner in granting Wiest equitable rescission of the $250,000 loan under N.D.C.C. § 32–04–21. The court's findings reflect that its decision was the product of a rational mental process, and we hold the district court did not abuse its discretion in granting rescission of the $250,000 loan.

### III

[¶ 30] The Bank argues the district court erred in finding its loan officer, Palmer, had a fiduciary relationship with Wiest. The district court found Palmer had a fiduciary relationship with Wiest, imposing on Palmer a duty to disclose, which the court found Palmer breached in obtaining advances on Wiest's $200,000 line of credit at the Bank. Wiest argues the court properly found a fiduciary relationship existed between Palmer and Wiest.

[¶ 31] "A bank generally has no duty to disclose a customer's financial condition, but a duty to give full, accurate and truthful information may arise if a bank responds to an inquiry about a customer's credit status or if there is a fiduciary relationship." *Rolin Mfg., Inc. v. Mosbrucker*, 544 N.W.2d 132, 136 (N.D.1996); *see First Nat'l Bank & Trust Co. v. Brakken*, 468 N.W.2d 633, 637 (N.D.1991); *Ostlund Chem. Co. v. Norwest Bank*, 417 N.W.2d 833, 836 (N.D.1988). This Court explained the nature of a relationship between a bank and its customers:

" 'The relationship between a bank and its customers is viewed as a debtor-creditor relationship which does not ordinarily impose a fiduciary duty upon a bank. Some courts have recognized

that a fiduciary relationship may arise under circumstances which reflect a borrower's reposing of faith, confidence and trust in a bank with a resulting domination, control or influence exercised by the bank over the borrower's affairs. Furthermore, the borrower or party reposing the confidence must be in a position of inequality, dependence, weakness, or lack of knowledge.'"

*Brakken,* at 637 (quoting *Union State Bank v. Woell,* 434 N.W.2d 712, 721 (N.D. 1989)) (citations omitted).

[¶ 32] The existence of a fiduciary relationship is a question of fact which is dependent upon a showing of "special circumstances." *Brakken,* 468 N.W.2d at 637. "A [district] court's findings of fact must enable [this Court] to understand its reasoning." *Citizens State Bank v. Schlagel,* 478 N.W.2d 364, 366 (N.D.1991). "A finding of fact 'is "clearly erroneous" only when, although there is some evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made.'" *Id.* (quoting *Estate of Elmer,* 210 N.W.2d 815, 820 (N.D.1973)). We will not reverse a district court's findings and decision merely because we may have viewed the facts differently. *Citizens State Bank,* at 366. "A choice between two permissible views of the weight of the evidence is not clearly erroneous." *Id.*

[¶ 33] The Bank asserts no "special circumstances" created a fiduciary relationship with Wiest. The Bank contends Wiest placed his trust and confidence in Burckhardsmeier, with whom he had a history of friendship and business. The Bank argues that although Palmer was at several loan meetings with Wiest and his business associates, Wiest was experienced in investing and risky transactions. The Bank also contends that Wiest did not plead the existence of a fiduciary relationship, but only that he would not have made

the loans had he known what the Bank knew about the parties' financial arrangements. The Bank asserts Wiest testified he relied on Burckhardsmeier for handling financial matters and communications with the Bank.

[¶ 34] The district court found that at all relevant times, Palmer was a vice president and loan officer and that his role went beyond that of merely a lender. The court found Palmer was present at all meetings and formulated methods of financing in concert with Burckhardsmeier. The court found that Wiest had placed his trust and confidence in Palmer during the course of these transactions and that Palmer had told Wiest he was actively pursuing an SBA loan for Glass Blast. The court found that Palmer knew of the nature and amount of Glass Blast's loans, the lack of collateral for the loans and the involvement of all the Burckhardsmeier-related companies. The court found that Palmer knew promised collateral had not been forthcoming on Wiest's loans in addition to dozens of other loans Palmer made to other entities affiliated with Burckhardsmeier. The court found Palmer was fully aware that Glass Blast would not be acquiring certain collateral for the loans and that Wiest was not privy to a communication from Palmer to Burckhardsmeier about the lack of collateral.

[¶ 35] In securing the $200,000 loan, Palmer continued to represent that it was necessary to keep the obligations of Glass Blast current to obtain an SBA loan. The district court found these payments only benefitted the Bank and were "of no benefit to Wiest." The court concluded that by failing to disclose theses circumstances to Wiest, Palmer had breached a fiduciary duty. The court held the remedy for the breach was a right of avoidance on the part of Wiest. The court found that for the $200,000 line of credit, Wiest had made advances totaling $277,422.54. The court

found that $175,060 of these advances were made at Wiest's request for his intended purposes and were expended by the Bank at Wiest's direction. Because Wiest had previously made payments of $98,381.35, the court held equitable rescission required Wiest to repay a balance of $76,678.65. The court found, however, two series of payments, totaling $102,362.54, had gone to the Bank to cover overdrafts and to pay on loans for Burckhardsmeier's related entities, and that these advances were made at the behest of Palmer. The court found that "the Bank, through Palmer, represented it was taking care of Wiest and [Glass Blast] while using this financing to cover its other losses on loans made by Palmer to other [Burckhardsmeier]-related entities." Under the court's findings, the Bank's role through Palmer had gone beyond an ordinary debtor-creditor relationship.

[¶ 36] The district court found these advances were not made at Wiest's request, but rather Palmer had forwarded to Wiest two separate loan requests for his signature, representing the advances were necessary for obtaining an SBA loan, which Palmer knew or should have known was already futile. Palmer did not alert Wiest to the actual situation, purporting instead to act in Wiest's interest. Because the district court concluded Palmer had "far more familiarity" than Wiest with the operative facts of these transactions, the court imposed a duty of disclosure on the Bank. The court concluded Palmer breached this duty by making misrepresentations to obtain these advances from Wiest and, therefore, those advances are not recoverable by the Bank.

[¶ 37] The evidence at trial and the district court's findings demonstrate Wiest placed trust and confidence in Palmer to obtain SBA financing and, correspondingly, in utilizing a $200,000 line of credit evidenced by the $200,000 loan. Although

disputed at trial, the evidence supports a finding that Palmer had greater knowledge regarding his SBA loan efforts and his continuing involvement in requesting and using the loan advances. Wiest lacked Palmer's knowledge of the material facts surrounding these transactions. Although the Bank contends on appeal that Wiest failed to exercise necessary diligence to discern the true situation, this argument ignores Palmer's duty to disclose material facts. Significantly, those advances on the $200,000 loan were procured after Burckhardsmeier and Palmer fraudulently induced Wiest to enter the $250,000 loan.

[¶ 38] Based on the record, we are not left with a definite and firm conviction a mistake has been made in finding "special circumstances" gave rise to a fiduciary duty, imposing a duty of disclosure. Under the facts and circumstances of this case, we conclude the district court did not clearly err in finding that the Bank's loan officer, Palmer, had a fiduciary relationship with Wiest at the time of the advances on the $200,000 loan, which imposed on Palmer a duty of disclosure to Wiest, and that Palmer breached that duty.

## IV

[¶ 39] We have considered the Bank's remaining issues and arguments and consider them to be unnecessary to our decision or without merit. The district court judgment is affirmed.

[¶ 40] GERALD W. VANDE WALLE, C.J., WILLIAM F. HODNY, S.J., DALE V. SANDSTROM, and CAROL RONNING KAPSNER, JJ., concur.

[¶ 41] The Honorable WILLIAM F. HODNY, S.J., sitting in place of MARING, J., disqualified.