# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

2019 ND 76

Baker Boyer National Bank,                              Plaintiff and Appellee

v.

JPF Enterprises, LLC,                              Defendant and Appellant

No. 20180222

Appeal from the District Court of McKenzie County, Northwest Judicial District, the Honorable Daniel S. El-Dweek, Judge.

AFFIRMED.

Opinion of the Court by Crothers, Justice.

Trevor A. Hunter (argued), Williston, ND, and Todd Reuter (on brief), Spokane, WA, for plaintiff and appellee.

Steven J. Wild, Bowman, ND, for defendant and appellant.

**Crothers, Justice.**

[¶1]    JPF Enterprises, LLC, appeals from a summary judgment awarding Baker Boyer National Bank $858,135.47 on its breach of contract claim and dismissing JPF's counterclaim for fraud in the inducement.  JPF argues the district court erred in granting summary judgment on the counterclaim for fraud in the inducement.  We conclude JPF failed to raise a genuine issue of material fact about the existence of a fiduciary relationship, and affirm the summary judgment.

I

[¶2]    Baker Boyer loaned money to JPF for the purchase of thirty mobile homes from Jason Sundseth and his company, Vindans LLC, for use as rental housing in western North Dakota.  In 2013, Vindans owned the homes and rented them to oil field workers through Greenflex Housing, LLC, and Greenflex's rental manager, Badlands, LLC.  Vindans purchased the homes with financing from Baker Boyer.

[¶3]    In the summer of 2013, James Foust, managing owner of JPF, and Sundseth began negotiations for JPF to purchase the homes from Vindans, and JPF sought financing for the purchase from Baker Boyer.  According to Foust, Baker Boyer's loan officer, Chris Sentz, obtained rental information from Greenflex Housing indicating the monthly rental proceeds from the thirty homes was $9,600 and would not service JPF's anticipated monthly payments of about $15,000 for the loan.  Foust also claimed Baker Boyer required JPF to contract with Greenflex Housing to rent the homes to oil field workers and informed him the arrangement would result in a return of $45,000 per month for the thirty homes.  According to Foust, Vindans' loan with Baker Boyer was near foreclosure and Baker Boyer failed to inform him that his purchase of the homes would not be profitable.

[¶4]   On August 20, 2013, Sentz emailed Foust that the requested financing for the purchase was "no longer a viable possibility" and that he would be sending an "official declination letter in the mail." Foust testified in his deposition that the denial was because Sundseth "was absolutely impossible to deal with" and Foust told Sentz he was "out of the deal." Foust also testified the denial had nothing to do with the "soundness of [his] financials." Baker Boyer did not send Foust a declination letter in the mail. On August 26, 2013, Sentz emailed Foust that "things have occurred" to allow Baker Boyer to again consider financing JPF's purchase of the homes. According to JPF, the subsequent development was the availability of Foust's personal guaranty of JPF's loan.

[¶5]   On September 24, 2013, JPF and Vindans executed an asset purchase agreement for JPF to purchase the thirty homes contingent on JPF obtaining financing from Baker Boyer. The purchase agreement stated the purchase price for the homes was a $1,000,000 payoff of Baker Boyer's loan to Vindans and a $245,000 payment to Vindans.

[¶6]   In October 2013, Baker Boyer and JPF executed loan documents for JPF to borrow $1,077,600 from Baker Boyer to finance JPF's purchase of the homes from Vindans. The loan documents included a promissory note, a business loan agreement, a commercial guaranty of JPF's loan by Foust, a security agreement listing the mobile homes as collateral for the loan, and financing statements. Foust's personal guaranty stated "that, absent a request for information, Lender shall have no obligation to disclose to Guarantor any information or documents acquired by Lender in the course of its relationship with Borrower."

[¶7]   In November 2015, JPF defaulted on its loan from Baker Boyer, and Baker Boyer sued JPF in North Dakota[1] to enjoin JPF from transferring or disposing of the loan collateral, to take possession of the collateral, for appointment of a receiver, for

---

[1]Baker Boyer also sued Foust personally in Washington on his personal guaranty. In October 2018 the Washington Court of Appeals affirmed a summary judgment dismissing Foust's counterclaim for fraud in the inducement. *Baker Boyer Nat'l Bank v. Foust*, 431 P.3d 131 (Wash. Ct. App. 2018).

sale of the collateral and for a money judgment. JPF answered and counterclaimed, admitting payments were not made as agreed and alleging fraud in the inducement. JPF claimed Baker Boyer acted as an intermediary for JPF's purchase of the homes from Vindans and failed to disclose information to JPF about the physical condition of the homes, the financial condition of Vindans, and the uncertain financial viability of the home rentals. JPF sought an order requiring Baker Boyer to refund more than $600,000 that JPF paid to Baker Boyer in exchange for JPF transferring all right, title and interest in the homes to Baker Boyer.

[¶8] The district court granted Baker Boyer's motion for summary judgment, ruling Baker Boyer was entitled to judgment as a matter of law on its claim for damages against JPF and awarding Baker Boyer $858,135.47. The court also concluded Baker Boyer was entitled to judgment as a matter of law on JPF's counterclaim for fraud in the inducement, ruling JPF failed to provide competent admissible evidence establishing a genuine issue of material fact about the existence of a fiduciary relationship between Baker Boyer and JPF. The court said:

> "The Defendant relies upon *American Bank Center v. Wiest*, 2010 ND 251 to support its counterclaim. However, unlike this case, *Wiest* involves the bank admitting that there was fraud committed by its agent, a loan officer. Also unlike this case, *Wiest* involves numerous material misrepresentations by the bank's loan officer which induced the debtor to borrow money. Furthermore, it is clear that the loan officer in *Wiest* was more than just a loan officer. Here, it does not appear that the bank was doing more than a bank loan officer typically would do. Therefore, there is no evidence of [a] fiduciary [ ] relationship between the parties in this matter.

> "The Defendant contends that the bank had a duty to disclose that the loan involving these trailers was nonperforming. As a knowledgeable investor, the Defendant had to know that banks sometimes make loans on assets that turn out to be nonperforming. Furthermore, a change in ownership or management of a real estate investment can often turn an unprofitable investment in the right direction. Therefore, the mere fact that the loans on these assets were nonperforming is not something that the bank would necessarily need to disclose. Moreover, as a non-party to the purchase agreement of these trailers, [the] bank had no duty to disclose that the assets were not profitable up to this point.

3

"The Court also is [ ] persuaded that having a lease agreement in place prior to the loan of $1 million would be part of the normal underwriting process, and not the result of a fiduciary relationship. Having such agreements in place reduce the risk of default, which is a legitimate goal of the lending process. Requiring such an agreement does not create a fiduciary or special relationship between the parties. Because there must be a fiduciary relationship as a condition precedent to a fraudulent inducement claim, the counterclaim must fail."

## II

[¶9]     We review the issues raised in this appeal in the posture of summary judgment. Under N.D.R.Civ.P. 56(c),[2] summary judgment "shall be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."   Our standard for reviewing a summary judgment is well established:

"Summary judgment is a procedural device for the prompt resolution of a controversy on the merits without a trial if there are no genuine issues of material fact or inferences that can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law. A party moving for summary judgment has the burden of showing there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. In determining whether summary judgment was appropriately granted, we must view the evidence in the light most favorable to the party opposing the motion, and that party will be given the benefit of all favorable inferences which can reasonably be drawn from the record. On appeal, this Court decides whether the information available to the district court precluded the existence of a genuine issue of material fact and entitled the moving party to judgment as a matter of law. Whether the district court properly granted summary judgment is a question of law which we review de novo on the entire record."

---

[2]Rule 56, N.D.R.Civ.P. was amended effective March 1, 2019. The former language of N.D.R.Civ.P. 56(c) is substantively the same as the current language in N.D.R.Civ.P. 56(c)(3).

*Wenco v. EOG Res., Inc.*, 2012 ND 219, ¶ 8, 822 N.W.2d 701 (quoting *Arndt v. Maki*, 2012 ND 55, ¶ 10, 813 N.W.2d 564).

[¶10]   Summary judgment is appropriate when a party fails to establish the existence of a factual dispute on an essential element of that party's claim on which the party will bear the burden of proof at trial.  *Mr. G's Turtle Mountain Lodge v. Roland Twp.*, 2002 ND 140, ¶ 23, 651 N.W.2d 625.  When no pertinent evidence on an essential element is presented to the district court in opposition to a motion for summary judgment, it is presumed no such evidence exists.  *Id.*  Issues of fact become issues of law if reasonable persons could reach only one conclusion from the facts.  *Saltsman v. Sharp*, 2011 ND 172, ¶ 5, 803 N.W.2d 553.

III

[¶11]   JPF argues the district court erred in dismissing JPF's counterclaim because genuine issues of material fact exist on its claim for fraud in the inducement.  Relying on *Am. Bank Ctr. v. Wiest*, 2010 ND 251, ¶¶ 31-32, 793 N.W.2d 172, JPF argues that the existence of special circumstances beyond a normal banking relationship is a question of fact, and that correspondence from Baker Boyer's loan officer, Sentz, shows this loan was not made in an ordinary lender-borrower relationship. JPF argues Baker Boyer breached a fiduciary duty to disclose information to Foust and JPF about the questionable financial viability of renting the homes.  JPF claims a fiduciary duty exists because Baker Boyer failed to inform JPF of the initial reason for denying the loan application in a declination letter required under 15 U.S.C. § 1691(d).  He also claims a fiduciary duty exists because Baker Boyer required JPF to contract with Greenflex Housing to manage the homes.  JPF argues evidence established a "unique underwriting process" rather than a standard lender-borrower relationship and Baker Boyer had a fiduciary duty to disclose information to Foust.

[¶12]   Baker Boyer claims the undisputed facts show its loan with JPF involved nothing more than a typical lender-borrower relationship.  Baker Boyer argues JPF failed to provide competent admissible evidence showing that JPF placed its faith,

5

confidence, or trust in Baker Boyer, that Baker Boyer exercised control or influence over JPF's affairs, or that Foust or JPF were in a position of inequality, dependence, weakness, or lack of knowledge.

[¶13] A valid contract requires parties capable of contracting, consent, a lawful object and sufficient consideration. N.D.C.C. § 9-01-02. *See Wiest*, 2010 ND 251, ¶ 10, 793 N.W.2d 172; *Erickson v. Erickson*, 2010 ND 86, ¶ 7, 782 N.W.2d 346. The parties' consent must be free, mutual and communicated by each to the other. N.D.C.C. § 9-03-01. *See Wiest*, at ¶ 10; *Erickson*, at ¶ 7. A party's apparent consent is not free when it is obtained through either actual or constructive fraud. N.D.C.C. §§ 9-03-03(3) and 9-03-07. *See Wiest*, at ¶ 10; *Erickson*, at ¶ 7. In *Erickson*, at ¶ 8, we discussed the application of actual or constructive fraud necessary to invalidate a contract:

> "Persons alleging actual or constructive fraud seek to invalidate contracts by arguing consent was not freely obtained. *See* N.D.C.C. § 9-03-01(1) (parties' consent to a contract must be free); § 9-03-03(3) (consent is not free when obtained through fraud); § 9-03-07 ('Fraud is either actual or constructive.'). The most significant difference between the two claims is that actual fraud requires proof of an intent to deceive, while constructive fraud requires no proof of such intent. N.D.C.C. §§ 9-03-08 and 9-03-09(1). Although actual and constructive fraud both invalidate a party's apparently free consent to a contract, the two types of fraud differ in the source of injury they address. Actual fraud confronts situations where one party intentionally misrepresents or conceals facts from another contracting party. N.D.C.C. § 9-03-08. Constructive fraud confronts situations where the source of the claimant's injury is the breach of an existing duty between the contracting parties. N.D.C.C. § 9-03-09(1). As this Court stated in *Fire Ass'n of Philadelphia v. Vantine Paint & Glass Co.*:
>> Constructive fraud . . . rests upon presumption and rests less upon furtive intent than does [actual] fraud. It is presumed from the relation of the parties to a transaction or from the circumstances under which it takes place."

133 N.W.2d 426, 431 (N.D. 1965) (quotation omitted).

[¶14] Under N.D.C.C. § 9-03-09:

> "Constructive fraud consists:

1. In any breach of duty which, without an actually fraudulent intent, gains an advantage to the person in fault or anyone claiming under that person, by misleading another to the other's prejudice or to the prejudice of anyone claiming under the other; or

2. In any such act or omission as the law specially declares to be fraudulent without respect to actual fraud."

[¶15] Under *Erickson* and our statutory provisions for consent to a contract and constructive fraud, JPF's claim for fraud in the inducement required Baker Boyer to have a fiduciary duty to JPF and to breach that duty.

[¶16] "The relationship between a bank and its customers is viewed as a debtor-creditor relationship which does not ordinarily impose a fiduciary duty upon a bank." *Union State Bank v. Woell*, 434 N.W.2d 712, 721 (N.D. 1989). "Some courts have recognized that a fiduciary relationship may arise under circumstances which reflect a borrower's reposing of faith, confidence and trust in a bank with a resulting domination, control or influence exercised by the bank over the borrower's affairs." *Id.* In those circumstances, "the borrower or party reposing the confidence must be in a position of inequality, dependence, weakness, or lack of knowledge." *Id.* However, "[i]n a commercial context, the mere rendering of advice by a lender to a borrower, even if given in a sincere effort to help the borrower prosper, does not transform a business relationship into a fiduciary relationship." *Id.* "Rather, actual day-to-day involvement in management and operations of the borrower or the ability to compel the borrower to engage in unusual transactions is required for the purposes of showing that a lending institution had 'control over a borrower.'" *Id.* The existence of a fiduciary relationship is a question of fact which is dependent upon a showing of special circumstances. *First Nat'l Bank & Trust Co. v. Brakken*, 468 N.W.2d 633, 637 (N.D. 1991).

[¶17] In *Woell*, 434 N.W.2d at 721, this Court affirmed the summary judgment dismissal of a claim that a bank breached a fiduciary duty to a customer. We explained the customer failed to provide any evidence permitting a reasonable inference the bank had dominion or control over the customer's business and the

7

record established the bank's association with the customer did not extend beyond the normal incidents of a debtor-creditor relationship. *Id.*

[¶18] In *Wiest,* 2010 ND 251, ¶ 38, 793 N.W.2d 172, we affirmed a district court's findings that special circumstances established a bank's fiduciary relationship with a customer and imposed a duty of disclosure. In that case, evidence showed a "rogue" loan officer's role in making loans went beyond that of merely a lender, and the loan officer's adverse relationship with another related individual, while representing to the borrower that the loan officer "was taking care" of the borrower, created a fiduciary relationship with the borrower. *Id.* at ¶¶ 14, 34-37. Under the circumstances in that case, this Court affirmed a district court's finding that the loan officer's failure to disclose operative facts to the borrower breached a fiduciary duty to the borrower. *Id.* at ¶¶ 37-38.

[¶19] Here, JPF has not presented specific evidence with relevant citation to the record to raise a factual issue that Baker Boyer assumed anything more than an ordinary lender-borrower relationship with JPF. According to Foust, he did not have an established business relationship with Baker Boyer and he had not done business with Baker Boyer before this loan. Although Baker Boyer obtained some knowledge about the financial viability and condition of the homes during the loan underwriting process, that evidence is consistent with a bank's underwriting process. Baker Boyer's knowledge does not raise a factual inference that it exercised domination, control, or influence over JPF's affairs on a day-to-day basis, that JPF placed faith, confidence and trust in Baker Boyer, or that JPF was in a position of inequality, dependence, weakness, or lack of knowledge. No evidence establishes Baker Boyer was involved in the day-to-day management of JPF, and this record does not support an inference of a "rogue" loan officer making loans beyond the normal underwriting process. *See Wiest*, 2010 ND 251, ¶¶ 14, 34-37, 793 N.W.2d 172. Moreover, Foust was an experienced businessperson. He testified in his deposition that he started his own company at age 25 in 1965, and that he thereafter started or purchased two other business entities before he retired in 2007. *See Baker Boyer Nat'l Bank v. Foust*,

8

431 P.3d 131, 137 (Wash. Ct. App. 2018) (in context of Baker Boyer's action on Foust's personal guaranty, recognizing Foust was experienced business person and holding Foust did not demonstrate any special circumstances giving rise to a fiduciary duty of disclosure and did not demonstrate Baker Boyer provided services beyond normal underwriting services).

[¶20] JPF argues Baker Boyer required JPF to enter into a lease and management agreement with Greenflex Housing, which JPF claims shows Baker Boyer exercised control over JPF's operation.

[¶21] Foust emailed Sentz in June 2013, stating his "[e]xpectations" that he would enter into a management agreement with Greenflex Housing for his contemplated purchase of the homes. The evidence shows Foust entered into a lease agreement with Greenflex Housing on June 1, 2013, which was before he purchased the homes from Vindans. According to Foust, Baker Boyer thereafter elevated Foust's expectation of a contract with Greenflex Housing to a requirement for the loan.

[¶22] We agree with the Washington Court of Appeals' conclusion that this requirement did not create a fiduciary relationship between Baker Boyer and JPF:

> "It is normal for commercial lenders extending substantial credit to satisfy themselves, sometimes through loan conditions or requirements, that a borrower's business will be operated competently during the loan term. Mr. Foust's own deposition testimony makes clear that this is what the bank's 'requirement' was all about.
>
> . . . .
>
> "There is no evidence that the bank insisted that the operating role Greenflex would fill must be filled by Greenflex to the exclusion of any other operator. Mr. Foust presents no evidence that he ever expressed the desire to fill the operational role with someone else qualified to rent units located in North Dakota. Traditional underwriting requirements that are designed only to ensure competent operation of a business but that do not divest management of the borrower of operational control do not give rise to a fiduciary relationship."

*Baker Boyer*, 431 P.3d at 137-38.

[¶23] On this record, we conclude Baker Boyer's requirement that JPF enter into a lease agreement with Greenflex Housing as part of the ordinary underwriting process

9

does not show a special circumstance giving rise to a fiduciary relationship between Baker Boyer and JPF.

[¶24] JPF also argues a fiduciary duty arises from Baker Boyer's failure to send an official declination letter to JPF after informing Foust by email that the loan was "no longer a viable possibility."

[¶25] In *Baker Boyer*, the Washington Court of Appeals rejected Foust's claim about Baker Boyer's failure to send a declination letter:

> "the contention that the Equal Credit Opportunity Act was violated is patently without merit. The act prohibits discrimination on the basis of race, color, religion, national origin, sex, marital status, or because a borrower gets public assistance. 15 U.S.C. § 1691(a). To effectuate its purpose, the act includes protections, one being that an applicant against whom adverse action is taken must be provided by the creditor with a statement of reasons for the adverse action. 15 U.S.C. § 1691(d)(2). "'[A]dverse action" means a denial or revocation of credit, a change in the terms of an existing credit arrangement, or a refusal to grant credit in substantially the amount or on substantially the terms requested.' 15 U.S.C. § 1691(d)(6). The statement of reasons helps identify when the creditor has acted in a discriminatory fashion.
>
> "Consistent with the clear intent of the legislation, the statement of reasons is required when adverse action is taken on the credit application and in this case there was only one application, by JPF, not Mr. Foust. The bank acted favorably, not adversely, on the application. No statement of reasons was needed because there could be no contention that the bank had discriminated in acting on JPF's credit application."

431 P.3d at 139-140.

[¶26] We agree with the Washington Court of Appeals' analysis. The lack of a declination letter in this case does not give rise to a fiduciary relationship between Baker Boyer and JPF.

IV

[¶27] The district court did not err in ruling as a matter of law that Baker Boyer did not have a fiduciary relationship with JPF. We affirm the summary judgment.

[¶28] Daniel J. Crothers

10

Lisa Fair McEvers

Jon J. Jensen

Jerod E. Tufte

Gerald W. VandeWalle, C.J.